[Civ. No. 25088. Third Dist. Sept. 4, 1986.]

FAHIZAH ALIM et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
WALTER R. ATLEE, Real Party in Interest.

COUNSEL

William B. Shubb, Charity Kenyon and Diepenbrock, Wulff, Plant & Hannegan for Petitioners.

No appearance for Respondent.

Ronald A. Clark and Stephen T. Cammack for Real Party in Interest.

## OPINION

**BLEASE, J.**—A reporter, an editor, and a publisher seek a writ of mandate to compel summary judgment in their favor in an action for invasion of privacy for publishing a newspaper article. The article disclosed that plaintiff, Walter Atlee, then Chief Deputy Director of the California Department of Veterans Affairs, was accused by the United States Veterans Administration (VA) of wrongful receipt of overpayments of his veterans disability stipend. The newspaper defendants moved for summary judgment claiming the publication is not actionable under constitutional precepts of freedom of the press. The trial court found plaintiff could not prove malice under

the *New York Times* doctrine (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710]) but denied summary judgment as to one count of the complaint which alleges an invasion of privacy predicated upon Civil Code section 1798.53, on the ground that the constitutional doctrine did not apply to it. We issued the alternative writ and will grant the defendants the relief they request.

## FACTS AND PROCEDURAL BACKGROUND

The article was printed in the Sacramento Bee on January 10, 1983. In sum it says that for more than 20 years Atlee received a monthly stipend from the VA for a service-connected disability. After the VA "reviewed" the case and "learned" of his current employment and "discovered" that he had worked full time for the state since 1965 it reduced Atlee's disability stipend retroactive to 1970. The VA took the position that Atlee knew or should have known he was being overpaid. In the early 1960's Atlee had received and returned annual VA questionaires concerning his employment status. In 1963 his benefits had been interrupted for failure to return such a questionaire. Atlee was appealing the VA decision and a hearing on the matter would be held. He denied wrongdoing in "never notifying the VA after he began working . . . ." He said he didn't know he was supposed to report; the VA never told him to do so. After he began working for the state the VA never asked whether he was employed. He found out that his employment might be material in the spring of 1982 and then notified the VA that he was working.

Atlee alleges that, as a result of the article, he was terminated as Chief Deputy Director of the California Department of Veterans Affairs. The complaint regarding the newspaper defendants at the time of summary judgment was organized into six surviving separate counts styled as causes of action. These respectively seek damages under the following ruberics: (1) invasion of privacy under Civil Code section 1798.53;[1] (2) intentional and (3) negligent infliction of emotional distress; (4) intentional and (5) negligent interference with prospective economic advantage; and (6) libel. The section 1798.53 count alleges that defendants disclosed personal or confidential information within the ambit of that statute "in a false and inaccurate manner."

Fahizah Alim authored the article, George Baker is her editor, and McClatchy Newspapers is the publisher of the Sacramento Bee. They are named defendants in Atlee's action. They moved for summary judgment claiming that the article is substantially truthful and any inaccuracy is

---

[1]All statutory references are to the Civil Code unless otherwise noted.

immaterial and incapable of defamatory meaning. Atlee opposed summary judgment on the ground that the article contains two "major falsehoods," i.e., "1. That Plaintiff did not notify the VA of his employment; 2. That the VA had 'discovered' that the plaintiff was employed."

Both sides tendered as evidence the July 30, 1984, opinion and findings of the Board of Veteran's Appeals in the matter of Atlee's appeal of the VA finding of overpayment.[2] The opinion includes a statement of evidence that had been adduced which, in major part, corroborates the facts asserted in the disputed newspaper article. The pertinent facts in the opinion include the following. The last VA employment questionaire had been sent to Atlee in 1965 and he had returned it indicating seven days part-time work in the prior year. In 1967 Atlee applied for educational benefits. The application form inquired about employment experience and Atlee related that he had had three months of work as a "Junior Staff Analyst." In July 1982 Atlee wrote to the Veterans Administration stating: "Please be advised that I am presently employed. It is my understanding that I have the responsibility of notifying you of this fact." Followup inquiries by the VA developed detailed information on the nature and duration of Atlee's employments.

The trial court issued a written opinion explaining its action in granting part but not all of the defendants' motion for summary judgment. The court said: "The record establishes that plaintiff did in fact report employment in 1965 and 1967, and that it was his voluntary notification to the Veterans Administration of his employment in 7/82 which resulted in the Veterans Administration's 'learning' and 'discovery' of such fact. [¶] The Court concludes that an average reader might reasonably infer from the subject article the false and defamatory meaning which plaintiff urges." The court held that for all causes of action save that of invasion of privacy under section 1798.53, plaintiff could not prevail because there was no triable issue of fact concerning actual malice. It distinguished the cause of action predicated upon section 1798.53 on the ground that the absence of actual malice is not a defense to the disclosure of information made confidential by the statute. For reasons which we next advance, we disagree.

## Discussion

### I

Section 1798.53 is a part of the Information Practices Act of 1977. (§§ 1798-1798.78.) The act declares that the right to privacy is threatened

---

[2]The board reversed the finding of overpayment. Under a federal statute Atlee's disability status could not be altered because it had been in effect for more than 20 years. The only statutory ground for alteration was actual fraud and the VA had not met its burden of proof of actual fraud.

by indiscriminate collection and dissemination of information maintained by government agencies which identifies and describes individuals. (§ 1798.1; § 1798.3.) Publicizing such information subjects those who do so to a civil action for invasion of privacy. (§ 1798.53)[3] The defendants contend this cause of action is subject to the constitutionally derived defense of absence of malice under the *New York Times* doctrine and, accordingly, that they are entitled to summary judgment. Atlee contends the malice doctrine does not apply to publication of information made confidential by statute. Alternatively he asserts that the malice doctrine is inapplicable to a cause of action for invasion of privacy that is not premised on falsity, and submits that is in part the situation here. Defendants reply that the publication is constitutionally privileged regardless of the kind of invasion of privacy. We agree with the defendants.

## A.

At the outset we reject plaintiff's suggestion that an action under section 1798.53 is not subject to free press defenses analogous to those available in common law actions for invasion of privacy. (Cf. *Mitchell* v. *Superior Court* (1984) 37 Cal.3d 268, 274, fn. 3 [208 Cal.Rptr. 152, 690 P.2d 625].) We will not so read the statute. To disregard those constraints could sound its death knell for failure to distinguish between constitutional and unconstitutional applications of inseverable language. (See *People's Advocate, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 316, 329-334 and 330, fn. 15 [226 Cal.Rptr. 640].) ■ However, no such meaning is manifest in section 1798.53 and we are required to read it, if (as here) it is semantically permissible, to avoid constitutional questions. (See e.g., *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 394 [211 Cal.Rptr. 758, 696 P.2d 150].) That reading follows.

Section 1798.53 does not simply denominate the cause of action it creates as a civil cause for intentional disclosure of confidential records. Rather, it

---

[3]Section 1798.53 in full states: "Any person, other than an employee of the state or of a local government agency acting solely in his or her official capacity, who intentionally discloses information, not otherwise public, which they know or should reasonably know was obtained from personal information maintained by a state agency or from 'records' within a 'system of records' (as these terms are defined in Federal Privacy Act of 1974 (P. L. 93-579; 5 U.S.C. 552a)) maintained by a federal government agency, shall be subject to a civil action, for invasion of privacy, by the individual to whom the information pertains.

"In any successful action brought under this section, the complainant, in addition to any special or general damages awarded, shall be awarded a minimum of two thousand five hundred dollars ($2,500) in exemplary damages as well as attorney's fees and other litigation costs reasonably incurred in the suit.

"The right, remedy, and cause of action set forth in this section shall be nonexclusive and is in addition to all other rights, remedies, and causes of action for invasion of privacy, inherent in Section 1 of Article I of the California Constitution."

characterizes the action as a civil action "for invasion of privacy . . . ." ▮ In so doing, section 1798.53 places its cause within the class of actions for the invasion of privacy. That classification carries with it, in our view, the usual conditions which attach to the maintenance of such actions, including the special defenses that pertain to the press. The statutory declaration that the right, remedy, and cause of action it sets forth are "in addition to" existing causes of action gives us no reason for pause. The implication that the cause created is meant to supplement rather than supplant existing remedies does not compel the conclusion that there is a difference in application to the press. That brings us to the constitutional claims.

## B.

Preliminarily we note the nature of the analogies between common law actions for invasion of privacy and those which might be tendered under section 1798.53. ▮ At common law there are four kinds of invasion of privacy actions which sound in tort. (See *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 35, fn. 16 [81 Cal.Rptr. 360, 459 P.2d 912]; Rest.2d Torts, § 652 A-E.) They are: (1) unreasonable intrusion upon solitude; (2) appropriation of name or likeness; (3) unreasonable publicity given to private life; and (4) publicity that unreasonably places one in a false light. (*Ibid.*) Atlee's claims arising under section 1798.53 are directly analogous to the latter two causes of action. Accordingly, to resolve this appeal we turn for analogical sustenance to the case law regarding the press defenses to such causes of action.

The case law font for constitutional defenses for otherwise actionable publications by a newspaper is *New York Times Co.* v. *Sullivan, supra,* 376 U.S. 254. ▮ In that case the Supreme Court held that the First and Fourteenth Amendments required a federal rule prohibiting "a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706].) The reason for this rule is that information about public officers is the lifeblood of popular sovereignty and the absence of the privilege "dampens the vigor and limits the variety of public debate." (*Ibid.*) The term "relating to his official conduct" in the *New York Times* formula has been elaborated in subsequent cases. It extends to anything which might touch on an official's fitness for office. (E.g., *Garrison* v. *Louisiana* (1964) 379 U.S. 64 [13 L.Ed.2d 125, 85 S.Ct. 209].)

▮ The principles of the *New York Times* doctrine apply to common law actions for invasion of privacy by false light publicity. (E.g., *Reader's*

*Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 265 [208 Cal.Rptr. 137, 690 P.2d 610].) In *Time, Inc.* v. *Hill* (1967) 385 U.S. 374 [17 L.Ed.2d 456, 87 S.Ct. 534] the plaintiff alleged that an article in a magazine falsely reported that a play portrayed an experience when he and his family were held hostage by escaped convicts. The Supreme Court applied the *New York Times* standard, noting that although this was not a libel action and did not involve a public official the First Amendment principles pronounced in *New York Times Co.* v. *Sullivan* require the same rule. (*Time, Inc.* v. *Hill, supra,* 385 U.S. at pp. 390-391 [16 L.Ed.2d at p. 468].) The principles of the *New York Times* doctrine have greater force as regards public officials (see, e.g., *Monitor Patriot Co.* v. *Roy* (1971) 401 U.S. 265, 271-272 [28 L.Ed.2d 35, 40-41, 91 S.Ct. 621]), a fortiori, the *New York Times* rule must pertain to a common law false light publicity action by a public official, where the matter touches on the official's fitness for office.

The remaining case law of interest is that pertaining to the conflict between the value of press freedom and that served by the common law cause of action for unreasonable publicity given to a private life. In *Cox Broadcasting Corp.* v. *Cohn* (1975) 420 U.S. 469 [43 L.Ed.2d 328, 95 S.Ct. 1029] the plaintiff, the father of a homicide/rape victim, sought damages for invasion of privacy by a newscast which disclosed the victim's identity. The defendant reporter learned the name of the victim by reviewing court records open to the public. (*Id.,* at p. 472 [43 L.Ed.2d at pp. 335-336].) The action arose under a Georgia statute which provided that it was a misdemeanor to publish or broadcast the name or identity of a rape victim. (*Ibid.*) Nonetheless, the Supreme Court held, "Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it." (*Id.,* at p. 496 [43 L.Ed.2d at p. 350].) However, the court took notice that the privacy claim weighed heavily on the constitutional scales. The opinion eschews the question "whether the State may ever defend and protect an area of privacy free from unwanted publicity in the press . . . ." (*Id.,* at p. 491 [43 L.Ed.2d at p. 347].) The opinion expressly left open the question of actionability if the press had acquired the information from sources not open to public inspection. (*Ibid.*)

That question received illumination regarding public officials in *Landmark Communications, Inc.* v. *Virginia* (1978) 435 U.S. 829 [56 L.Ed.2d 1, 98 S.Ct. 1535].) In that case the State of Virginia convicted a newspaper owner of the offense of divulging information about the proceedings of the Virginia Judicial Inquiry and Review Commission concerning the disability or misconduct of judges. These proceedings are declared to be confidential by the Constitution and statutes of Virginia. In defense of the conviction Virginia asserted its many interests in the confidentiality of the commission pro-

ceedings. (*Id.*, at pp. 835-836 [56 L.Ed.2d at pp. 8-9].) The Supreme Court held that, in view of First Amendment free press precepts, none of these interests, including the risk of injury to the judge under inquiry, permitted criminal punishment of members of the news media for divulging or publishing truthful information regarding commission proceedings. (*Id.*, at pp. 845-846 [56 L.Ed.2d at pp. 14-15].) We now turn to the application of these precedents to this case.

### C.

As we have shown, these precedents are apposite to the defenses contemplated by the characterization of the cause created by section 1798.53 as one for invasion of privacy. However, we do not use the federal precedents as federal law. ■ Rather, we use them by analogy to inform us of the content of our own constitutional protections of a free press, those contained in article I, section 2, which are "more definitive and inclusive than the First Amendment . . . ." (*Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116].) In this manner we found our decision wholly upon the California Constitution and resolve all questions about the application of federal precedents as questions of state law.

■ Atlee first claims that the trial court correctly denied summary judgment on the ground that *New York Times* does not apply to an action under section 1798.53. In the trial court the parties' main battle concerned the application of *Landmark, supra,* 435 U.S. 829, to this case. Atlee carried the day by persuading the trial court that *Landmark* establishes a press privilege to give publicity to information made confidential by statute but that the privilege is restricted to a truthful publication. Atlee reiterates this view. The argument is not persuasive.

The publication in issue in *Landmark* contained admittedly truthful information. Its holding is therefore limited to the proposition that the First Amendment prohibits criminal punishment of the press for "publishing truthful information regarding confidential proceedings of the Judicial Inquiry and Review Commission." (435 U.S. at p. 837 [56 L.Ed.2d at p. 9]; fn. omitted.) However, this does not establish the converse proposition that publication of untruthful information is always actionable. As Justice Powell said in *Cox, supra*: "Our recent opinions dealing with First Amendment limitations on state defamation actions all center around the common premise that while the Constitution requires that false ideas be corrected only by the competitive impact of other ideas, the First Amendment affords no constitutional protection for false statements of fact. See *Gertz, supra,* at 339-340 [41 L.Ed.2d 789]. Beginning with this common assumption, the decisions of this Court have undertaken to identify a standard of care with

respect to the truth of the published facts that will afford the required 'breathing space' for First Amendment values." (*Cox, supra,* 420 U.S. at p. 499, fn. 3 [43 L.Ed.2d at p. 352] [conc. opn. of Powell, J.].) Atlee's claim that only truthful publications are protected under the *Landmark* holding confuses the ends of free press protection with the standard of care appropriate to those ends.

Insofar as Atlee's claim under section 1798.53 depends upon falsity of the statements published, the standard of care which governs is the *New York Times* actual malice doctrine. In that respect Atlee's claim is analogous to a common law action for invasion of privacy by false publicity. The gist of his claim is a damaging falsehood about a highly placed civil servant, second in command of a department of state government. The alleged falsehood pertains to his honesty in conduct leading to incorrect payment of government benefits under a program similar to that he is charged with administering. This touches on his fitness for office. *Time, Inc.* v. *Hill, supra,* 385 U.S. 374, and the consideration that the publication is squarely within the ambit of *New York Times Co.* v. *Sullivan* compel the conclusion that, as regards truthfulness, the standard of care is the same whether the rubric be libel or false light invasion of privacy.

Atlee makes no claim that the trial court was incorrect in its summary adjudication that he could not show actual malice under the libel cause of action. Accordingly, insofar as his invasion of privacy count depends on falsity, summary judgment against him is warranted.

## II

■ Atlee's other contention is that he has a cause of action for invasion of privacy regardless of the truthfulness of the article. This cause of action is analogous to that at common law for unreasonable publicity given to another's private life. However, "Almost any truthful commentary on public officials or public affairs, no matter how serious the invasion of privacy, will be privileged. By volunteering his services for public office the official (as opposed to the ordinary employee) waives much of his right to privacy)." (*Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 535, fn. 5 [93 Cal.Rptr. 866, 483 P.2d 34].) Given the holding in *Landmark, supra,* 435 U.S. 829, we view this press disclosure of information bearing on the fitness for office of a public official as within the protective ambit of the California's constitutional free press constraint. Atlee asserts that *Landmark* only applies to criminal sanctions against the press. He does not tell us why it is so limited. If the need for publication of information about public officials warrants a privilege against criminal sanctions it must also warrant a privilege against civil sanctions. (Compare *New York Times Co.* v. *Sullivan,*

*supra*, 376 U.S. 254 [11 L.Ed.2d 686] with *Garrison* v. *Louisiana, supra*, 379 U.S. 64 [13 L.Ed.2d 125].) Accordingly, given the free press policy in the California Constitution we construe section 1798.53 as not meant to reach the publication in issue here.

The petition is granted. Let a peremptory writ of mandate issue directing the trial court to enter summary judgment in petitioners' favor.

Evans, Acting P. J., and Sims, J., concurred.