543 A.2d 1181

Rolf LARSEN, Appellant,

v.

PHILADELPHIA NEWSPAPERS, INC., Knight–Ridder Newspapers, Inc., PG Publishing Co., William Block, Paul Block, Jr., Daniel R. Biddle, Edwin Guthman, Sam S. McKeel, Fritz Uysman, Eileen Foley, John G. Craig, Jr., and Robert Surrick.

Superior Court of Pennsylvania.

Árgued Sept. 28, 1987.

Filed June 2, 1988.

68

David J. Armstrong, Pittsburgh, for appellant.

Samuel E. Klein, Philadelphia, for Philadelphia Newspaper, etc., appellees.

Walter T. McGough, Pittsburgh, for PG Pub., etc., appellees.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, OLSZEWSKI, DEL SOLE, KELLY, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

This is an appeal from an interlocutory order granted by permission of the Superior Court to the appellant, Rolf Larsen. See Pa.R.App.P. 312; 42 Pa.C.S. § 702(b).

■ Because the appellant challenges the grant of the appellees'[1] preliminary objections in the nature of a demurrer to his amended complaint, we must accept as true all well-pleaded facts in his amended complaint and the reasonable inferences to be drawn therefrom. *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). Further, a demurrer can only be sustained if it is certain that no recovery is permitted. Any doubt must be resolved against sustaining the demur-

---

1. The appellees/defendants consist of Philadelphia Newspapers, Inc., Knight–Ridder Newspapers, Inc., PG Publishing Co., William Block, Paul Block, Jr., Daniel R. Biddle, Edwin Guthman, Sam S. McKeel, Fritz Huysman, Eileen Foley, John G. Craig, Jr. and Robert Surrick.

rer. *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). In accordance with those standards, the factual allegations in the amended complaint must be examined to determine whether reasonable men might infer a libelling of the appellant and/or an invasion of his privacy by the appellees has transpired.

On December 5, 1980, as a result of various articles appearing in *The Philadelphia Inquirer*[2] and *The Pittsburgh Post–Gazette,*[2] in which the appellant claims he was portrayed as being involved in "political activity, racism, favoritism, and influence peddling", the then Chief Justice of our Supreme Court, Henry X. O'Brien, indicated to the appellees that he was requesting the Judicial Inquiry and Review Board (JIRB) to initiate an investigation of the matters which were published.

On or about June 1, 1982, the JIRB commenced formal hearings concerning the appellant, the conclusion of which occurred on May 5, 1983, and led to an exoneration of the appellant and a JIRB vote, of 5–3, that the entire record of the investigation, including its findings, be sealed forever.

During the course of the hearings, the appellant charges, the appellees published numerous articles: some allegedly placed him in a false light, others attributed to him the violation of the Code of Judicial Conduct and, lastly, others contained purported confidential information (e.g., testimony given by witnesses) of what transpired during the JIRB inquiry, the latter allegedly in violation of the state constitution (Article V, Section 18(h)), a statute (42 Pa.C.S. § 3334) and the JIRB rules of procedure (Rule 20).

Following these publications, the appellant filed a seven-count, 129–paragraph complaint in equity.

In Count I, the appellant sought a permanent injunction against the appellees from continuing to publish or repub-

**2.** The appellee Knight–Ridder Newspaper, Inc., a corporation, owns, operates and controls Philadelphia Newspapers, Inc., which, in turn, publishes *The Philadelphia Inquirer.* As for *The Pittsburgh Post–Gazette,* it is owned and published by the appellee/corporation PG Publishing Co.

lish articles libelling the appellant and/or all or portions of the supposedly confidential transcript and record of the JIRB proceedings.

Counts II and III claimed the appellant was defamed by the articles published and asked for damages, as was the case in all subsequent counts, in excess of $20,000 for the injuries incurred; Count IV's cause of action was rooted in Restatement (Second) of Torts § 652B, 42 Pa.C.S. § 3334, the state constitution (Article V, Section 18(h)) and JIRB's Rule 20, i.e., intrusion of the right of privacy; Count V's contention was premised on Restatement (Second) of Torts § 652E, i.e., invasion of privacy: false light, by the appellees' purported selective publication of confidential excerpts from the JIRB proceedings; Count VI's request for relief was grounded upon the appellees' failure to respect the inherent right of the appellant to his reputation, as allegedly protected by Article I, Section 1, Article V, Section 18(h) of the state constitution, and 42 Pa.C.S. §§ 3334, 8341 et seq.; and Count VII rested upon a right of action purportedly existing in 42 Pa.C.S. § 4135 for the claimed defamatory publications by the appellees.

Preliminary objections in the nature of a demurrer followed and culminated in the submission of an amended complaint, which was similar in substance to the original one presented, by the appellant. What followed was an order of court, accompanied by a 49–page opinion, which, as is herein germane to the matter on appeal, (1) sustained the demurrer to Count IV, but granted leave to file a second amended complaint to the appellant to substantiate his cause of action under Section 652B of the Restatement (Second) of Torts, (2) sustained the demurrer to Count V and granted leave to the appellant to amend to plead facts giving rise to a cause of action under Section 652E of the Restatement (Second) of Torts, (3) sustained the demurrer to Count VI and (4) sustained the demurrer to Count VII.

Thereafter, the order entered was amended to read that the paragraphs recited above involved controlling questions of law as to which there was substantial ground for a

difference of opinion and that an immediate appeal from the original order might materially advance the ultimate determination of the matter. This Court, upon petition of the appellant, granted permission to appeal the interlocutory order at issue. With the submission of briefs by all concerned and the presentment of oral argument before this Court sitting en banc, the matter is now ripe for resolution.

■ The first issue to be addressed is whether the court below erred in sustaining the demurrer to Counts IV and VI of the amended complaint on the basis that the appellant did not have a cause of action against the appellees for their purported violation of the confidentiality mandated in Article V, Section 18(h) of the Pennsylvania Constitution, 42 Pa.C.S. § 3334 and Rule 20 of the Supreme Court Rules governing JIRB proceedings.[3]

It is the appellant's position that without engrafting a private cause of action entitling one to the recoupment of

---

3. Article V, Section 18(h) of the Pennsylvania Constitution reads:

**Suspension, Removal, Discipline and Compulsory Retirement**

Section 18.

\* \* \* \* \* \*

(h) The Supreme Court shall review the record of the board's proceedings on the law and facts and may permit the introduction of additional evidence. It shall order suspension, removal, discipline or compulsory retirement, or wholly reject the recommendation, as it finds just and proper. Upon an order for compulsory retirement, the justice or judge shall be retired with the same rights and privileges were he retired under section sixteen of this article. Upon an order for suspension or removal, the justice or judge shall be suspended or removed from office, and his salary shall cease from the date of such order. All papers filed with and proceedings before the board shall be confidential but upon being filed by the board in the Supreme Court, the record shall lose its confidential character. The filing of papers with and the giving of testimony before the board shall be privileged.

42 Pa.C.S. § 3334 provides:

All papers filed with and proceedings before the Judicial Inquiry and Review Board shall be confidential but upon being filed by the board in the Supreme Court, the record shall lose its confidential character. 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

Rule 20 of the Judiciary Inquiry and Review Board reads:

All papers filed with and proceedings before the Board shall be confidential until a record is filed by the Board in the Supreme Court.

damages for violation of the confidentiality provisions of the Pennsylvania Constitution, statute and JIRB rule governing judicial inquiries, "the confidentiality provisions lose all meaning and their purpose cannot be effectuated." This is so, argues the appellant, since the various provisos requiring confidentiality make no reference as to how a violation of the confidentiality is to be treated or whether any type of sanction was ever contemplated by the drafters of the respective regulations.

In response, the appellees contend that the violation of the confidentiality provisions cannot give rise to a private cause of action for a breach thereof. If this were to occur, they urge, such an interpretation would violate their First Amendment rights under the United States Constitution and under Article I, Section 7 (Freedom of the press) of the Pennsylvania Constitution.

Preliminarily, prior to reaching the question of whether a *private* cause of action exists so as to afford the appellant the right to sue the appellees for damages, via the Pennsylvania Constitution, statute and rule proffered for alleged damages arising out of the publication of what took place at the JIRB proceedings, we find it prudent to address the question of whether the appellees had a right to publish the information generated during the JIRB hearings. For if, as we see it, the appellees had a constitutionally-based right to print the information secured by them, (the methodology by which this occurred is not discernible from the pleadings before us) then, absent "actual malice" in the publication, the appellees would be immune from liability, at least to the extent that recovery would be premised upon the specific provisions of the Pennsylvania Constitution, statute and rule argued by the appellant.[4]

We begin our discussion with *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), in which the United States Supreme Court

---

4. Parenthetically, the appellees (as non-participants in the JIRB proceedings) allegedly did no more than report (in a substantively correct manner) what took place before a board of record. See generally *Sprague v. Walter*, 357 Pa.Super. 570, 516 A.2d 706 (1986).

was faced with the issue of whether the Commonwealth of Virginia could subject individuals, including newspapers, to "criminal" sanctions for disclosing information presented before a state judicial review commission authorized to hear complaints as to judges' misconduct, given that such proceedings were declared to be "confidential" by the State Constitution (Article 6, § 10), statute (§ 2.1–37.13) and rule of the commission (No. 10).

It appears that a Virginia newspaper printed an accurate article on a pending inquiry by that State's Judicial Inquiry and Review Commission (JIRC) investigating a judge's conduct. Thereafter, the newspaper was indicted for divulging the information submitted to the JIRC as violative of the State's statute which implemented the constitutional mandate of confidentiality. The two were consistent with the JIRC's Rule No. 10 on confidentiality, save for the Rule's imposition of a misdemeanor status for its violation.

The managing editor, albeit cognizant of the possible criminal repercussions, decided to publish the article in the belief that the matter was of public importance and should be brought to the readers' attention. Also, the editor testified that no member of his staff was summoned before the JIRC to give testimony in connection with what appeared in the article.

After trial, in which the newspaper was found guilty and ordered to pay a $500 fine, the Supreme Court of Virginia upheld the conviction on appeal. It did so in the belief that:

> ... absent a requirement of confidentiality, the [JIRC] could not function properly or discharge effectively its intended purpose.[5] Thus, sanctions [we]re indispensable to the suppression of a clear and present danger posed by the premature disclosure of the Commission's sensitive

5. These purposes were defined as: (a) protection of a judge's reputation from the adverse publicity which might flow from frivolous complaints, (b) maintenance of confidence in the judicial system by preventing the premature disclosure of a complaint before the JIRC had determined that the charge was well founded, and (c) protection of complainants and witnesses from possible recrimination by prohibiting disclosure until the validity of the complaint had been ascertained.

proceedings—the imminent impairment of the effectiveness of the Commission and the accompanying immediate threat to the orderly administration of justice.

217 Va. 699, 712, 233 S.E.2d 120, 129.

On certiorari to the United States Supreme Court, the decision was reversed and review was restricted to the narrow issue of whether the First Amendment condones criminal punishment of third persons who are strangers to the inquiry, including the news media, for divulging or publishing truthful information regarding confidential proceedings of the JIRC.[6]

In making its determination, the United States Supreme Court concluded that:

> ... the publication Virginia seeks to punish under its statute lies near the core of the First Amendment, and the Commonwealth's interests advanced by the imposition of criminal sanctions are insufficient to justify the actual and potential encroachments on freedom of speech and of the press which follow therefrom.

435 U.S. at 838, 98 S.Ct. at 1541 (Citation omitted). Elaborating further, the Court engaged in a discussion recounting the traditional belief that the law affords " '[j]udges as persons ... no greater immunity from criticism than other persons or institutions.' " Id. at 839, 98 S.Ct. at 1541, quoting *Bridges v. California*, 314 U.S. 252, 289, 62 S.Ct. 190, 206, 86 L.Ed. 192 (1941). This precept is embedded in the understanding that the judicial conduct of judges is a matter of the "utmost public concern." And, to effectuate this belief, the press is " 'regarded as the handmaiden of effective judicial administration.... [and] guards against the miscarriage of justice by subjecting the ... judicial process to extensive public scrutiny and criticism.' " Id.,

6. At bar, our reading of the pleadings does not indicate the source of the appellees' information/transcripts regarding the JIRB proceedings. Thus, it is not presumptuous for us to equate third-party/non-participatory status with the appellees, as occurred in *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978).

quoting *Sheppard v. Maxwell*, 384 U.S. 333, 350, 86 S.Ct. 1507, 1515, 16 L.Ed.2d 600 (1966).

The fact that the JIRC was under examination entitled it to no less exposure than the operation of the judicial system itself. Both were held to be a "matter of public interest, necessarily engaging the attention of the news media." Id. at 839, 98 S.Ct. at 1542. As such, the publication by the newspaper satisfied those concerns of informing the public and prompting discussion of governmental affairs which the First Amendment was written to protect. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 269–70, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964).

The assertion of the attorneys for the Commonwealth of Virginia that criminal sanctions were necessary to ensure the guarantee of confidentiality and that anything less would render such secrecy no more than an empty promise was likewise rejected by the Court as being buttressed by little more than assertion and conjecture.

To the same extent, we find that the appellant's contention that a refusal by this Court to acknowledge and legitimize a private cause of action for violation of the particular provisions of the Pennsylvania Constitution, statute and rule cited earlier would render the "confidentiality" aspect of each nugatory is no more persuasive.

The incantations of the appellant as to the protections sought to be afforded those subject to the scrutiny of the JIRB, being, essentially, similar to those voiced to the United States Supreme Court (see note 5, supra) as warranting the enforcement of a violation of Virginia's "confidentiality" provision, cannot be endorsed without running afoul of *Landmark*. The Supreme Court's profound concern with having the First Amendment's freedom of the press to scrutinize and discuss governmental, as well as judicial, matters is pristinely clear and takes precedence over the breach of a "confidentiality" proviso associated with a judicial inquiry board's function and operation.

As to one's recourse for a breach of such a "confidentiality" proviso, it was noted in passing that the use, by the

more than 40 other States having similar commissions, of contempt charges was deemed an appropriate tool to giving effect to the confidentiality provisions associated with such inquiry boards. See *Landmark*, supra, 435 U.S. at 841 n. 12, 98 S.Ct. at 1542–43 n. 12.

What is to be gleaned from the *Landmark* case is that neither the protection of a judge's reputation nor the preservation of the integrity of the courts is sufficient to condone the *subsequent punishment of the press* when it comes to recounting what transpired before a judicial inquiry and review board, even assuming that, for example, criminal sanctions do in fact enhance the guarantee of confidentiality.

The *Landmark* Court conceded that some risk of injury to a judge under inquiry may be posed by premature disclosure. Nonetheless, before *punishment* can be imposed for utterances made with regard to proceedings held before a judicial inquiry and review board, "the substantive evil must be extremely serious and the degree of imminence extremely high before utterances can be punished...." *Bridges v. California*, supra, 314 U.S. at 263, 62 S.Ct. at 194. In the view of the Court in *Landmark*, the confidentiality claim and its effectuation fell short of such a requirement.

We find *Landmark* to be controlling here.

Instantly, as in *Landmark*, premature disclosure of information before an inquiry board hearing testimony regarding a judge's alleged misconduct was published by a newspaper. Similarly, as in Pennsylvania, the Virginia inquiry board drew its authoritative "confidentiality" requirement from the State's Constitution, statute and rule, all of which are similar in substance to those in Pennsylvania and presented by the appellant as grounds for invocation of a private right of action for the violation of the same.

The only difference between the two sets of provisions, of any material worth, appears to be that the Virginia version imposes criminal sanctions whereas Pennsylvania's does not.

Notwithstanding the variance in the sanctions to be imposed by both sets of provisions to enforce a violation of the "confidentiality" aspect of the inquiry boards' proceedings, we find that the imposition of monetary damages (civil sanction) can be just as inimical to and an encroachment of one's First Amendment guarantees as criminal sanctions. Cf. *Alim v. Superior Court (Atlee)*, 185 Cal.App.3d 144, 229 Cal.Rptr. 599, 605 (1986) ("If the need for publication of information about public officials warrants a privilege against criminal sanctions it must also warrant a privilege against civil sanctions." (Citations omitted)).

Additionally, we note that if the Legislature had intended to permit the recoupment of damages for violation of 42 Pa.C.S. § 3334, it could have very easily expressed such an intention, as is the case in 42 Pa.C.S. § 8351(a), which explicitly addresses the subject of liability for wrongfully instituting or pursuing civil proceedings. See *Lindsay v. Thomas*, 77 Pa.Cmwlth. 171, 174, 465 A.2d 122, 123 (1983).

Consistent with the aforesaid is the decision of the Third Circuit Court of Appeals in *The First Amendment Coalition v. Judicial Inquiry and Review Board*, 784 F.2d 467 (1986), wherein it was observed that nothing in Pennsylvania's Constitution bars the dissemination of information which the press *has received*.

Thus, nothing in the text of the provisions relied upon by the appellant or the case law reviewed suggests that this Court should create a civil remedy not otherwise expressly mentioned in the relevant provisions, and we have been presented with no persuasive argument to the contrary. Accordingly, the appellant's request that we endorse a private cause of action for a violation of the respective provisions of the Pennsylvania Constitution, statute and rule, mentioned previously, will not be entertained on the authority proffered to us at this time.

■ We now turn to the appellant's second contention on appeal. It alleges the commission of error by the court below in sustaining the demurrer to Count IV since the amended complaint did state a cause of action for invasion

of privacy under § 652B of the Restatement (Second) of Torts.

Section 652B provides for a cause of action against one who intrudes upon the privacy of another; to-wit:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

Violation of Section 652B is an actionable tort in Pennsylvania. *Marks v. Bell Telephone Co. of Pa.*, 460 Pa. 73, 331 A.2d 424 (1975).

In its opinion, the court below concluded that the appellant had satisfied two of the three prongs necessary to make out a cause of action under Section 652B, i.e., the appellees (1) intentionally intruded upon (2) the private affairs of the appellant by publication of "any" portion of the JIRB proceedings prior to that point in time when they would become a matter of public record with their submission to the Supreme Court of Pennsylvania for consideration of disciplinary action against the party being investigated. We only find fault with the conclusion that "any" portion of the JIRB proceedings being published prior to a set point in time would be actionable. See note 7, infra.

Recently, a California appeals court interpreted various United States Supreme Court rulings, which included *Landmark*, on the subject of the liability aspect of the news media in disclosing confidential information gathered by a review board assessing the qualifications of a candidate for judicial office. In doing so, the court concluded that the news media should be insulated from civil liability in publishing information protected by a state's laws from disclosure, with the caveat that the methods implemented to secure the data had to be consistent with "routine reporting techniques." *Nicholson v. McClatchy Newspapers*, 177 Cal.App.3d 509, 223 Cal.Rptr. 58, 64 (1986). In particular, the *Nicholson* court wrote:

While the government may desire to keep some proceedings confidential and may impose a duty upon participants to maintain confidentiality, it may not impose criminal or civil liability upon the press for obtaining and publishing newsworthy information through routine reporting techniques. (See *Landmark Communications, Inc. v. Virginia,* supra, 435 U.S. at pp. 837–838, 98 S.Ct. at 1340–41, 56 L.Ed.2d at p. 9.)

223 Cal.Rptr. at 64.

From our reading of the pleadings peculiar to Count IV, the appellant charges the appellees, in paragraph 115, with acting "in concert with one another to *illegally* procure, publish, republish or cause to be published the purported confidential transcript" from the JIRB proceedings. This attribution of "illegality" would appear to negate, at least at first blush, the use of proper methodology in the gathering of information which would render immune from suit the news media. This is in accord with the precept that a "publisher of a newspaper has no special immunity from the application of general laws[, since h]e has no special privilege to invade the rights and liabilities of others." *The Associated Press v. Nat. Lab. Rel. Bd.,* 301 U.S. 103, 132–133, 57 S.Ct. 650, 656, 81 L.Ed. 953 (1937). Stated differently, "[c]rimes and torts committed in news gathering are not protected[, and this] is no threat to a free press in requiring its agents to act within the law." *Galella v. Onassis,* 487 F.2d 986, 995–996 (2d Cir.1973). Accord *Landmark,* supra; *Nicholson,* supra, 223 Cal.Rptr. at 63.

However, our dilemma is that we are unable to ascertain the thrust of the appellant's "illegality" argument, i.e., we know not whether it relates to a purported violation of the Pennsylvania Constitution, statute and rule of confidentiality covering JIRB proceedings (which, this day, we have found to be wanting), or whether it encompasses the use of subterfuge in obtaining the information published which goes beyond the acceptable bounds of news gathering techniques and exposes news media defendants to liability for

torts committed in pursuit of information. See *Nicholson*, supra.

Accordingly, we find that the court below did not err in sustaining the appellees' preliminary objection in the nature of a demurrer as to Count IV as written and affording the appellant the opportunity to amend, for a second time, his contention surrounding his Section 652B claim. (See Order of Court dated May 16, 1984, paragraph 2) In particular, he will be required to elaborate on the "illegality" assertion to hurdle the legitimate methods open to the press to obtain information and avoid civil liability for what it prints.[7] See *Landmark*, supra; *Nicholson*, supra. Consequently, if the appellant drafts his amended complaint to aver the appellees' engagement in illegal conduct in the securement of the JIRB transcripts, one cannot arguably deny that a "reasonable" person would be offended by such a course of conduct aimed at exposing personal information to the public. See *Alim*, supra.

The third protestation by the appellant centers upon alleged court error in sustaining the appellees' preliminary objections as to Count V (Invasion of Right of Privacy: False Light under Restatement (Second) of Torts § 652E).

Our review of the first paragraph in Count V indicates that incorporated therein by the appellant is a majority of the preceding 115 paragraphs of the amended complaint. As such, we conclude that a "false light" claim under Section 652E has been made out as to all of the articles assailed by the appellant as being actionable as a tort. In support of such a finding, we will discuss a portion of the

7. We caution that, in drafting the amended complaint, the appellant must realize the impact of the recent Third Circuit decision condoning the restriction on the divulging of information heard before the JIRB, but not to the extent that a witness testifying before the JIRB is precluded from speaking to the press about what he testified to at the proceedings. See *The First Amendment Coalition v. Judicial Inquiry and Review Board*, 784 F.2d 467 (3rd Cir.1986). This, the Third Circuit concluded, would be violative of the First Amendment freedom of speech, and, therefore, was accessible to the news media through its legitimate news-gathering tactics and a proper subject of publication.

pleadings which we believe is reflective of the particularity with which Count V was drafted so as to hurdle the appellees' preliminary objections in the nature of a demurrer. However, before engaging in such a discussion, we deem it advisable to set forth the status of a "false light" cause of action in this jurisdiction.

It is beyond peradventure that the tort of invasion of privacy does exist in this Commonwealth. See *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974). Even though the contours of this tort remain amorphous, see *Marks v. Bell Telephone Co. of Pa.*, supra, Superior Court has adopted the definition of the tort of invasion of privacy promulgated by the Restatement (Second) of Torts §§ 652B–E. See *Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985) (reargument denied). Moreover, it has been observed that the cause of action for invasion of privacy is actually comprised of four analytically distinct torts: 1) intrusion upon seclusion, 2) appropriation of name or likeness, 3) publicity given to private life, and 4) publicity placing a person in false light. *Marks v. Bell Telephone Co. of Pa.*, supra.

Instantly, the appellant contends that his privacy was invaded by the appellees' publication of articles which placed him in a false light. Under Section 652E of the Restatement (Second) of Torts, the tort is defined as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

As is so clearly stated in Section 652E, a publication is actionable if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless

disregard of its falsity. See Comments *a, c & d*. Further, to constitute a tortious invasion of privacy an act (publication) must " 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' " *Hull v. Curtis Publishing Co.*, 182 Pa.Super. 86, 99, 125 A.2d 644, 646 (1956), quoting *Smith v. Doss*, 251 Ala. 250, 252–53, 37 So.2d 118, 120–21 (1948).

Moreover, our review of the writings and case on the subject at hand also gives credence to the tenet that recovery in tort for the disclosure of public, as well as private, facts, even though they be true, is warranted to protect a claimant's right to be free from being placed in a false light and incurring the resultant mental suffering, shame or humiliation which may be caused by the discriminate publication of such facts. See *Prosser, Privacy*, 48 Cal.L.Rev. 383, 416 (1960); *Fogel v. Forbes*, 500 F.Supp. 1081, 1087 (E.D.Pa.1980); *Hull v. Curtis Publishing Co.*, supra.

Allowing the individual a cause of action in instances like that in the case before us, where the media allegedly selectively excerpts and publishes portions of the truth, finds support in the law of defamation. For example, in *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 448 A.2d 6 (1982), the Court ruled that a finding of falsity might be drawn from the true, factual statements, if those factual statements implied falsehoods. "Literal accuracy of separate statements will not render a communication 'true' where as here the implication of the communication as a whole was false." *Id.*, 301 Pa.Superior Ct. at 493, 448 A.2d at 15. *Accord McCormack v. Oklahoma Publishing Co.*, 613 P.2d 737 (Okla.1980); *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412 (Tenn.1978); *Kapellas v. Kofman*, 1 Cal.3d 20, 459 P.2d 912, 81 Cal.Rptr. 360 (1969).

The falsity with which we are concerned arises from the inference derived from published statements, whether those statements are actually true or not. We find that the element of falsity is met if the plaintiff alleges that the defendant knowingly or recklessly selectively printed or broadcast true statements or pictures in a manner which

created a false impression. To permit an editor to publish misleading portions of the truth is the equivalent of sanctioning the promulgation of falsehoods under the guise of the First Amendment. This was never the intention of the drafters of the Constitution nor has the First Amendment been interpreted to insulate one from any and all complaints premised upon the publication of false or misleading information. See *Sprague v. Walter*, 357 Pa.Super. 570, 516 A.2d 706 (1986); *McCormack*, supra. This is evident from the fact that in the print media, "the passages selected for deletion and modification ... can cause a dramatic change in the impression which the final article will generate in the minds of the average reader. And these editing decisions are calculated ones made by the editors to comport with the tone of the magazine desired." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 446, 273 A.2d 899, 916 (1971). Accord *Sprague*, supra.

In other words, despite the accuracy of the facts disseminated, discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light entitles the grievant to recompense for the wrong committed. See *Bell v. Birmingham Publishing Co.*, 266 Ala. 266, 96 So.2d 263 (1957); *Anderson v. Low Rent Housing Commission*, 304 N.W.2d 239 (Iowa 1981); *McCormack*, supra.

■ At bar, the appellant's incorporation of almost all of the previous 115 paragraphs into Count V necessitates that those paragraphs (and the material facts asserted therein) be viewed as a whole and are to be given every reasonable inference deducible therefrom in assessing the preliminary objections of the appellees in regard thereto. *Sinn v. Burd*, supra. As such, we find that Count V withstands the challenge of the appellees' preliminary objections.

To explain, *The Post–Gazette* articles of November 19, 20 of 1982 & March 9 of 1983 were alleged to have accused the appellant of lying under oath before the JIRB as to his supposed encouragement of Allegheny County District At-

torney Robert Colville to run for the Pennsylvania Supreme Court. (Paragraphs 30, 32 & 34)

The appellant asserted that the November 19 and 20 articles were "false" in that he did not deny under oath that he visited the district attorney in 1980. (Paragraphs 35 & 36) Further, according to the appellant, the two articles were printed by *The Post–Gazette* knowing that they were false or in reckless disregard of their truth or falsity. (Paragraph 37)

In addition, as we read on in the complaint, we learn that *The Inquirer* published an article titled: "Now the people will judge", on May 8, 1983, recounting that the appellant had taken part in the Pennsylvania Supreme Court's rejection of a JIRB member's request that the records of the Larsen inquiry be opened to the public or the high Court consider the matter for review. (Paragraph 59) Again, reports in the May 13 & 29, 1983 editions of *The Inquirer* recited essentially the same information. (Paragraphs 61 & 63) Likewise, on June 15 & 18 of 1983, *The Post–Gazette* is charged by the appellant with recapitulating the identical story accusing him of voting in a matter concerning his inquiry. (Paragraphs 65 & 67)

Of interest in our assessment of the propriety of the preliminary objections granted by the court below is the fact that, at paragraph 71, the appellant specifically denied "deliberat[ing] or vot[ing] on a matter involv[ing] himself", as referred to in paragraphs 59, 61, 63, 65 & 67. Nor, the appellant continues to aver in paragraph 71, was the subject of the review before the Supreme Court on a petition to take jurisdiction of the case. Rather, it was merely an application for leave to file a petition.

As for Count V's incorporation of paragraphs 59, 61, 63, 65 & 67, we deem each sufficient to allege a cause of action under Section 652E and to withstand a demurrer. The same can be said with regard to the entire Count V segment of the appellant's complaint. Accordingly, the appellant need not amend Count V. To the extent that the court below so directs, its order is reversed.

 The last issue to which we respond is the error allegedly committed by the court below in sustaining the demurrer to Count VII, wherein 42 Pa.C.S. § 4135 was stated as the basis for a cause of action against the appellees for the various articles that they published.

Section 4135 reads:

(a) General rule.—Publication out of court respecting the conduct of judges, district justices, other system or related personnel, jurors or participants in connection with any matter pending before any tribunal shall not be construed as a contempt of court on the part of the author, publisher or other person connected with such publication.

(b) Civil and criminal liability not affected.—If any publication specified in subsection (a) shall improperly tend to bias the minds of the public, or of the tribunal, other system or related personnel, jurors or participants in connection with any matter pending before any tribunal, any person aggrieved thereby may proceed against the persons responsible for the publication by appropriate civil action or criminal proceeding.

The Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended and renumbered § 4135 on December 20, 1982, P.L. 1409, No. 326, art. II, § 201, 42 Pa.C.S. § 4135 (Supp.1987).

In paragraph 128, the appellant propounds that:

The aforementioned publication and republication by [the appellees] has caused extreme and irreparable harm to [the appellant's] interest in (1) having the matters resolved by individuals who have not been exposed to such publications and republications of [the appellees]; (2) having justice administered without any question of bias or suggestion of bias; (3) having justice administered by individuals who are not predisposed; and (4) having the resolution of the matter presented to a public and electorate which has not been exposed to [the appellees'] publications.

Our review of the law interpreting the statute in question reveals the absence of informative material on the subject.

Thus, given the void, we will resort to the Statutory Construction Act to aid us in our effort to decipher the intent of the Legislature in enacting Section 4135. To begin with, we look to 1 Pa.C.S. § 1921, which provides:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

The Act of December 6, 1972, P.L. 1339, No. 290, § 3. Next, we examine 1 Pa.C.S. § 1922, and it reads:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

(5) That the General Assembly intends to favor the public interest as against any private interest.

The Act of December 6, 1972, P.L. 1339, No. 290, § 3.

To start with, a common sense reading of subsection (b) of Section 4135 indicates that its purpose and objective is to be informational. For example, it advises "any person aggrieved" by the out-of-court publication of his or her conduct in connection with any matter pending before any tribunal can seek redress "by appropriate civil or criminal proceeding[s]."

As an adjunct to this observation, we note that the 1982 amendments to Section 4135 removed "or criminal action or proceeding as in other cases of wrongful publication" and substituted the verbiage "action or criminal proceeding". Thus, we interpret the clear intent of the Legislature to be to foreclose any separate cause of action for "wrongful publication" under the guise of Section 4135.

Further, we find that Section 4135, rather than being the engine that provides the force for one's complaint, is merely a directional signal which lights the way for one to pursue once he/she believes that an out-of-court publication respecting conduct being heard before any tribunal biases him/her in the eyes of the public, the tribunal hearing the matter or other participants involved in the process under review.

It is not as though the appellant were without any recourse in his claimed suit against the appellees; we are merely holding that Section 4135 is not a basis for a separate cause of action independent of the "appropriate" civil or criminal remedies that abound in the civil area of the law, e.g., defamation.

Therefore, we are in agreement with the court below that the demurrer to Count VII is to be sustained without leave

to amend since it is obvious to this Court that there is no legal basis for relief under Section 4135.

We, having reviewed the various issues presented for our consideration in this interlocutory appeal granted by permission, now affirm in part and reverse in part the order of the court below.

KELLY, J., concurs in the result.

ROWLEY and DEL SOLE, JJ., recused themselves and did not participate in the consideration or decision of this appeal.