483 A.2d 1377

**Rebekah HARRIS, A Minor, by Brigitte HARRIS, Her Guardian, and Brigitte Harris, James Harris and Janis Harris, Appellants,**

v.

**EASTON PUBLISHING CO., Commonwealth of Pennsylvania, Department of Public Welfare, and Northampton County Board of Public Assistance.**

Superior Court of Pennsylvania.

Argued March 26, 1984.

Filed Nov. 9, 1984.

142

144

146

148

Margaret H. Poswistilo, Easton, for appellants.

April L. Cordts, Easton, for appellees.

Before ROWLEY, MONTEMURO and JOHNSON, JJ.

JOHNSON, Judge:

We are called upon to review the summary dismissal of an action for invasion of privacy where a newspaper of general circulation published facts concerning the private lives of an applicant for public welfare benefits and her family on information supplied by the Department of Public Welfare. The appeal is from an order granting summary

judgment in favor of Easton Publishing Company (Company). Since we find that the pleadings raise genuine issues of material fact concerning publicity given to private life, we reverse and remand.

Appellants filed a complaint in trespass on September 10, 1980 alleging that a column appearing in the Company's newspaper on April 25, 1979 had revealed personal facts of appellants. The complaint alleged that publication of the column constituted an invasion of privacy as (1) an unreasonable intrusion upon appellants' seclusion and (2) publicity given to appellants' private lives. The complaint also alleged a violation of the Public Welfare Code, 62 P.S. § 101 et seq.

The record establishes that appellant Brigitte Harris was born in Germany, married a U.S. enlisted man and gave birth to three children in Germany. She subsequently moved to the United States and gave birth to a fourth child. In January of 1979, Brigitte filled out an application for medical assistance and food stamps on behalf of herself, her granddaughter Rebekah, and pregnant daughter Phyllis all of whom occupied the same household, along with Brigitte's son James and daughter Janis. Brigitte refused to sign the application and subsequently withdrew it because (1) she refused to permit the caseworker to photocopy certain documents which bore a written prohibition against photocopying and (2) there was some question regarding household size and the income of her son, James.

On February 21, 1979, Brigitte Harris telephoned the Department of Public Welfare (Department) and discussed with an employee her difficulties in applying for benefits. The Department subsequently altered some of the facts in order to disguise appellants' identities and fashioned a fictionalized account of the inquiry. This account was sent to various newspapers in northeast Pennsylvania for inclusion as part of a public service column regularly provided by the Department. The purpose of the column was to create more public understanding of the Department's operations, policies and available services.

The column, consisting of a question and response, stated:

### Welfare Corner

Q. I recently applied for medical assistance and food stamps for myself, grandson, and my youngest daughter who is 17 and lives with me. She is pregnant and needs the help of a doctor. The welfare office told me I would have to let them make a copy of my naturalization papers. I was born in Germany, married a G.I. and had four children in Germany by him. Then we came to this country and my youngest child, now 17, was born in New Jersey. The trouble is that the welfare office didn't want to give me medical assistance because I refused to let them copy my naturalization papers. It already says on this paper that it must not be copied. My daughter has a birth certificate in this country which I showed them and they wanted to copy that also.

I called the Immigration Service in Washington and they referred me to you. Can you help?

A. The county assistance office supervisor reported to this office that you decided not to sign the application and, therefore, it is being held pending your decision. The worker stated that she could waive the copying of the naturalization papers even though it is customary to establish proof of age. An examination of your daughter's birth certificate was sufficient to establish her age as a minor child, although we now make copies of these to maintain proper documentation. We were also informed that you had a 19-year old son who works intermittently for a company which has irregular work. Since he and a young grandson of yours also live in your home, your total family income (all those presently living in the home) will have to be established to determine your eligibility. From what you have stated, you are probably eligible for food stamps as well as medical assistance, but complete information must be given.

We were also informed that a letter had recently been sent to you urging you to come back so that your eligibili-

ty and that of your daughter, in particular, can be determined. We hope you will do this for your daughter and her unborn child's sake. At the time your completion of the application and the determination of eligibility is made, you should also ask your worker about sources of other kinds of help for your daughter. Please be sure that we want you to have the assistance your family needs if you are entitled to it.

The above column, as sent to the Company by the Department prior to its appearance in the newspaper, set forth the initials and address "J.S., Reading" following the sentence "Can you help?" The initials and address were not included by the Company when it published the column. A disclaimer was also regularly included by the Department with the proposed columns which stated, inter alia, that the information in the column is disguised and that attempts should not be made to identify specific persons from the information provided. This disclaimer was also not published with the column.

The complaint alleged that from the information which appeared in the column, numerous persons had indicated to appellants and to others that from reading the column, they had immediately recognized appellants as the purportedly fictional characters in the account. In response to interrogatories, appellants listed seventeen persons who had so identified them from reading the column.

Appellees filed answers and new matter, to which appellants replied. The complaint was subsequently dismissed with prejudice as to appellees Commonwealth of Pennsylvania, Department of Public Welfare and the Northampton County Board of Public Assistance, based on governmental immunity. The Company's motion for summary judgment was subsequently granted and the instant appeal taken.

Appellants raise two issues on appeal: (1) whether summary judgment was improper because of the existence of a genuine issue of material fact and (2) whether the Company was properly entitled to summary judgment as a matter of law.

Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975). To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. *Id.* In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. *Spain v. Vicente*, 315 Pa.Super. 135, 461 A.2d 833 (1983). Summary judgment is appropriate only in those cases which are clear and free from doubt. *Id.*

Appellants' first two bases for relief concern the alleged invasion of their right of privacy. It is well established in Pennsylvania that a violation of the right of privacy is an actionable tort. *See Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133 (1974); *Bennett v. Norban*, 396 Pa. 94, 151 A.2d 476 (1959). "The gist of privacy is the sense of seclusion, the wish to be obscure and alone, and it is a trespass to abuse these personal sensibilities." *Bennett v. Norban*, 396 Pa. at 99, 151 A.2d at 479. The right of privacy is a qualified right to be let alone; but to be actionable, the alleged invasion of that right must be unlawful or unjustifiable. *Lynch v. Johnston*, 76 Pa.Commw. 8, 463 A.2d 87 (1983).

An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light. *Marks v. Bell Tel. Co. of Pa.*, 460 Pa. 73, 331 A.2d 424 (1975); *Vogel v. W.T. Grant Co., supra.* The Restatement (Second) of Torts §§ 652B–E set forth those four categories of invasion of privacy. No Pennsylvania case has specifically adopted the final draft of the Restatement regarding these

sections, although our supreme court did adopt section 652D, as it appeared in Tentative Draft No. 13 of the Restatement (Second) of Torts. *Vogel v. W.T. Grant Co., supra; see also Wells v. Thomas,* 569 F.Supp. 426 (E.D.Pa. 1983). *But see Fogel v. Forbes, Inc.,* 500 F.Supp. 1081 (E.D.Pa.1980) (stating the Pennsylvania courts have adopted Restatement (Second) of Torts §§ 652B–E and citing to the final draft of the Restatement). Our state courts have cited with approval the Restatement (Second) of Torts §§ 652B–E for support regarding invasion of privacy matters. *See e.g. Nagy v. Bell Tel. Co. of Pa.,* 292 Pa.Super. 24, 436 A.2d 701 (1981); *see also Martin v. Municipal Publications,* 510 F.Supp. 255 (E.D.Pa.1981). We believe that the Restatement most ably defines the elements of invasion of privacy as that tort has developed in Pennsylvania.

Appellants' first privacy claim alleges intrusion upon seclusion. Section 652B of the Restatement (Second) of Torts states:

### § 652B. Intrusion upon Seclusion

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

An action pursuant to this section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. Restatement (Second) of Torts § 652B, comment a. The invasion may be (1) by physical intrusion into a place where the plaintiff has secluded himself, (2) by use of the defendant's senses to oversee or overhear the plaintiff's private affairs, or (3) some other form of investigation or examination into plaintiff's private concerns. *Id.,* comment b.

The defendant is subject to liability under this section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff

has thrown about his person or affairs. *Id.,* comment c; *Fogel v. Forbes, Inc.,* 500 F.Supp. at 1087. There is also no liability unless the interference with the plaintiff's seclusion is substantial and would be highly offensive to the ordinary reasonable person. Restatement (Second) of Torts § 652B, comment d.

■ The facts alleged to constitute the invasion of privacy in the instant case were not obtained by the Company by means of any intentional intrusion. Brigitte Harris voluntarily exposed the facts to the Board of Assistance and the Department. Also, the Company received these facts unsolicited from the Department. Hence, the trial court properly granted summary judgment as to this portion of the complaint, as no genuine issue of material fact exists and because the Company was entitled to judgment as a matter of law.

Appellants' second privacy claim was based on section 652D of the Restatement (Second) of Torts which states:

### § 652D. Publicity Given to Private Life

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter published is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

■ The elements of the tort are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public. *See e.g. Brown v. Mullarkey,* 632 S.W.2d 507 (Mo.App.1982); *Forsher v. Bugliosi,* 26 Cal.3d 792, 163 Cal.Rptr. 628, 608 P.2d 716 (1980).

■ The element of "publicity" requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Restatement (Second) of Torts § 652D, comment a. *Wells*

*v. Thomas, supra.* Disclosure of information to only one person is insufficient. *Nagy v. Bell Tel. Co. of Pa., supra. See also Vogel v. W.T. Grant Co., supra* (disclosure to four persons held insufficient).

We note that there is a legal distinction between "publication" as that term is used in connection with liability for defamation, and "publicity" as it is used in a § 652D action for invasion of privacy. While the intentional or negligent communication of defamatory matter to a single person (or to a newspaper) might constitute a "publication" in the context of an action for defamation, *see* Restatement (Second) of Torts § 577 and comment b, that does not concern us here. The "publicity" which we here examine requires that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Where a communication involving private facts reaches, or is sure to reach, the public, then publicity has been given to that party's private life.

The second element requires that the publicity involve a private fact. A private fact is one that has not already been made public. Liability cannot be based upon that which the plaintiff himself leaves open to the public eye. Restatement (Second) of Torts § 652D, comment b. It also follows from the use of the term *private* fact that the reader or recipient of the private fact not have prior knowledge of that fact: there can be no liability where the publicity given involves facts with which the recipient is familiar.

The third element requires that a reasonable person of ordinary sensibilities would find such publicity highly offensive. In making this determination, the customs of the time and place, occupation of the plaintiff and habits of his neighbors and fellow citizens are material. Restatement (Second) of Torts § 652D, comment c. *Aquino v. Bulletin Company,* 190 Pa.Super. 528, 154 A.2d 422 (1959). The act which constitutes the tortious invasion of

privacy must be committed in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. *Nagy v. Bell Tel. Co. of Pa., supra.*

The final element exempts from liability those facts which are of legitimate concern to the public, such as official court records open to public inspection. *Cox Broadcasting Co. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). This also applies to persons who, voluntarily or involuntarily, have become public figures, Restatement (Second) of Torts § 652D, comments e and f, and may also apply to certain private facts relating to those public figures, such as the life history of one accused of a sensational crime, *id.,* comment h, and even to the members of that person's family. *Id.,* comment i, *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (1971). *See also* Prosser, Handbook of the Law of Torts 809–12 (4th ed. 1971).

In *Aquino v. Bulletin Company,* 190 Pa.Super. at 533–34, 154 A.2d at 426, this court stated that:

The rule does not depend for its validity upon a breach of confidence, nor upon the untruth of the statements. The liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities. It is only where the intrusion has gone beyond the limits of decency that liability accrues. These limits are exceeded where intimate details of the life of one who has never manifested a desire to have publicity are exposed to the public. On the other hand, there is no invasion of a right of privacy in the description of the ordinary goings and comings of a person, or of weddings, even though intended to be entirely private, or of other publications to which people do not ordinarily seriously object. The fact that the plaintiff suffered neither pecuniary loss nor physical harm is unimportant. The damages whether nominal, compensatory or punitive can be awarded in the same way in which general damages are given for defamation. (citation omitted)

■ We must initially determine whether the evidence as presented satisfies the element of publicity, as a matter of law. The evidence indicates that the column appeared in the Company's general circulation newspaper. However, this fact alone is insufficient to establish publicity. For a fact concerning a complainant's private life to be communicated to anyone, the disclosed facts must necessarily be identified with the complainant. Absent an ability to identify the complainant, there can be no communication and hence, no publicity.

■ The column in the instant case did not, on its face, reveal appellants' identities. The fact that the complainant was not specifically named in a defamatory publication or utterance does not prevent recovery in a libel action. *Cosgrove Studio & Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751 (1962). In such circumstances, the court must initially decide whether the defamatory material was capable of being reasonably understood as intended to refer to the complainant. *Davis v. R.K.O. Radio Pictures, Inc.*, 191 F.2d 901 (8th Cir.1951); Prosser, *supra*, § 111. The same analysis should be accorded to an alleged tort action pursuant to section 652D of the Restatement, regarding the element of publicity.

■ The evidence establishes that seventeen individuals did in fact identify appellants from the column. Hence, the allegedly private facts were communicated by the appearance of the column in the newspaper to those seventeen individuals. A question of law arises as to whether the communication to seventeen individuals is a large enough group that the matter must be regarded as substantially certain to become one of public knowledge. *See Vogel v. W.T. Grant Co.*, *supra*. We hold that, under the facts of this case, communication to a group of seventeen individuals is large enough to constitute publicity as a matter of law. Therefore, we hold that the element of publicity has been established.

The second element, private facts, is shown by the allegations in the complaint which set forth the details in the column which corresponded to the private lives of the appellants. The fact question at issue here involves whether the seventeen individuals who "recognized" appellants from the information in the column did so with or without prior knowledge of these facts. The use of the term "recognize" should not, on its face, be considered to limit the averment in the complaint where no further allegations in any of the pleadings set forth that these individuals had prior knowledge of any or all of the facts revealed in the column.

The extent of the knowledge held by the seventeen individuals, or others, prior to publication is a matter for proof and factual determination. Of course, there can be no recovery of damages on the basis of the publication of "private facts" that were already known to the recipients of the publication prior to publication.

We disagree with the trial court's determination that the facts were not private because they had been made public by the Department's distribution of the column to various newspapers for publication. Such a distribution does not constitute publicity so as to render private facts public where the general public is not privy to such distributions and the column as distributed is anonymous. Also, the Company has made no allegation that anyone in receipt of the article as distributed by the Department was able to identify appellants.

The third element requires the publicity given to private facts be highly offensive to a reasonable person. This element finds support from both the protection afforded welfare applicants pursuant to 62 P.S. § 404 of the Public Welfare Code and from a commonsense analysis of the type of information at issue.

Section 404 of the Public Welfare Code states:

§ 404. Regulations for protection of information

(a) The department shall have the power to make and enforce regulations:

(1) To protect the names of applicants for and recipients of public assistance from improper publication, and to restrict the use of information furnished to other agencies or persons to purposes connected with the administration of public assistance. Upon request by an adult resident of the Commonwealth, the department may furnish the address and amount of assistance with respect to persons about whom inquiry is made; but, information so obtained shall not be used for commercial or political purposes; and, no information shall be furnished regarding any person's application for, or receipt of, medical assistance.

(2) To protect the rights and interests of persons about whom personal or confidential information is in its possession.

(b) The regulations shall not prevent or interfere with investigations by proper authorities as to the rights of persons to receive assistance or as to the amounts of assistance received.

 Clearly, while recipients of assistance do not have an *absolute* right to keep private their addresses and amount of assistance in certain cases, applicants have a legitimate basis for believing that the personal or confidential information revealed to the Department as part of their applications for assistance will not subsequently appear in their local newspaper for all to read. This belief is supported by language found in *McMullan v. Wohlgemuth*, 453 Pa. 147, 165, 308 A.2d 888, 897 (1973), *appeal dismissed*, 415 U.S. 970, 94 S.Ct. 1547, 39 L.Ed.2d 863 (1974).

The statutory ban against disclosing the names of public assistance recipients is a clear recognition and directive by the Legislature that the privacy of the recipient is a fundamental need worthy of protection. This Court is bound to give great deference to this sound legislative judgment. The statutory limitation imposed on appellee's asserted First Amendment right to compel

the disclosure of those receiving assistance is no greater than necessary to protect the substantial governmental and individual interests involved. (citations omitted)

■ We hold that a question of fact arises from the averments presented as to whether the publicity given to these facts was highly offensive to a reasonable person.

■ The fourth element requires that the publicity given to private facts not involve a subject of legitimate public concern. There can be no doubt as to the benefits inherent in the publication of information to aid those eligible for public assistance who encounter difficulties in applying for assistance or continuing their receipt thereof. However, there is *no* legitimate public concern in giving publicity to the actual circumstances of a person's application for assistance where intimate personal facts are revealed (1) in such a way as to imply that those facts are true and (2) where the personal facts are unnecessary to aid those interested in receiving advice in their applications for assistance.

■ The article in question consisted of a purported letter from a medical assistance and food stamp applicant and a response from the Department. The letter requested aid concerning a specific problem: the propriety of copying naturalization papers by the welfare office. Various personal facts unrelated to this question appeared in both the letter and the response, such as: (1) the pregnancy of the seventeen-year-old daughter of the applicant, (2) the pregnant daughter's need of help from a doctor, (3) the fact that the applicant was born in Germany, married a G.I. and had four children in Germany by him, (4) the failure of the applicant to sign the application, and (5) the fact that the applicant had a nineteen-year-old son working intermittently. None of this information was necessary to understand or respond to the letter's request for aid. The form and tone of the article clearly implied that the facts were true. Therefore, there was no legitimate public concern in giving publicity to the intimate personal facts set forth in the article.

The trial court, in its opinion dated June 30, 1982, set forth its interpretation of the issue in this case as being whether the defendant Easton Publishing Company invaded the plaintiffs' privacy by printing information received by it, unsolicited, from the Department of Public Welfare. The court went on to state that the case concerns the right of the press to publish information which it has already acquired without solicitation. Whether the information came to the attention of the defendant by means of its own solicitation or completely unsolicited, the only possible relevance of this fact goes to the determination of whether the information was private. There is no exception to the tort of invasion of privacy for giving publicity to the private life of another where the party giving such publicity does so on the basis of an unsolicited receipt of the private information.

In support of its conclusion, the trial court cites *McMullan v. Wohlgemuth, supra.* In *McMullan* a newspaper was denied access by the Department of Public Welfare to the names and addresses of, and amounts received by, public welfare recipients. The court held that the Public Welfare Code prohibited disclosure of such information to a newspaper, the "Right to Know Act", 65 P.S. § 66.1 et seq., did not entitle the newspaper to the information, and neither the federal nor state constitutional provisions regarding freedom of the press gave the newspaper the right to gather news by compelling disclosure of the information. The court states, in dictum, that "we emphasize that this Court is not here concerned with the right of a newspaper to publish information *which it has already acquired."* 453 Pa. at 165–66, 308 A.2d at 898 (emphasis in original; citations omitted).

The information in the instant case, however, was far more injurious than merely the name, address and amount of assistance contemplated in *McMullan.* Applicants for welfare benefits would be justifiably appalled at having the confidential and highly personal information they provide publicized in a newspaper. Our legislature apparently has

come to the same conclusion, and protected that information by statute. 62 P.S. §§ 401, 404.

The court also cites to *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) for support. However, the situation in *Time* differed greatly from the instant case. In *Time*, the plaintiff had become a public figure, albeit involuntarily, by his having been held hostage with his family by escaped convicts in his home. *Life* magazine published an article reviewing a play allegedly based on the incident. The plaintiff alleged invasion of his privacy for *falsely* reporting that the play was based on the incident, when in fact the play varied greatly from the actual circumstances. Hence, a different type of invasion of privacy was present in that case: one that introduced the element of the facts being public and which also involved a question of whether the statements made were false. That case has no direct application to the instant situation.

The right of privacy competes with the freedom of the press as well as the interest of the public in the free dissemination of news and information, and these permanent public interests must be considered when placing the necessary limitations upon the right of privacy. *See Hull v. Curtis Publishing Company*, 182 Pa.Super. 86, 125 A.2d 644 (1956). An action based on such right must not become a vehicle for establishment of a judicial censorship of the press. *Aquino v. Bulletin Company, supra.* However, on balancing the various interests, we hold that the Company was not entitled to judgment as a matter of law.

The right of privacy is intended, inter alia, to protect persons from unwarranted publicity concerning their personal lives. There can be no doubt that the facts publicized in the instant case were of the type which were designed to be protected. Their dissemination to the general public was highly offensive, particularly in light of the statutory protection afforded to them pursuant to the Public Welfare Code. The facts publicized were not of legitimate concern to the public. No other exception is applicable to plaintiffs, as they were not public figures, nor were the facts made public prior to this publication. We there-

fore hold that because genuine issues of material fact are present, summary judgment was inappropriate.

Appellants alleged in their complaint that the disclosure of the facts constituted a violation of the provisions of the Public Welfare Code. The Company's motion for summary judgment included the said violations and the trial court's order granted summary judgment generally. However, appellants have not specifically argued that the trial court erred in granting summary judgment as to the alleged violations of the Public Welfare Code. Hence, we need not review the propriety of the order with respect to those violations.

The order of June 30, 1982 is affirmed, as to the counts alleging a violation of the Public Welfare Code and alleging a violation of appellants' right of privacy pursuant to the Restatement (Second) of Torts § 652B.

The order of June 30, 1982 is reversed, as to the count of appellants' complaint alleging a violation of their right of privacy pursuant to the Restatement (Second) of Torts § 652D, and the case remanded for further proceedings, consistent with this opinion.

Jurisdiction is not retained.