**Santillo v. Philadelphia Newspapers, Inc.**

*Frank P. Murphy,* for plaintiff.

*Thomas K. Ellixson,* for defendants Clement Reedel and Robert Piermatteo.

LAWRENCE, *J.,* May 25, 1993—This is an appeal from the court's order of April 1, 1993 granting summary judgment in favor of defendants Clement Reedel and Robert Piermatteo.

In 1987, Michael Santillo was a candidate for the elective office of District Justice of Bridgeport, Pennsylvania. He had previously been a member of the Upper Merion Police Department until he resigned in 1979. After he announced his bid for elective office, the *Philadelphia Inquirer,* in April, 1987, printed an article regarding charges that plaintiff had attempted to sexually assault a 16 year-old girl during his tenure at the police department. The reports also provided details of the resulting police investigation and plaintiff's subsequent resignation from the police force. The *King of Prussia Courier* printed two similar articles a month later.

After the publication of the articles, plaintiff filed the instant action against, inter alia, Philadelphia Newspapers, Inc., Suburban Publications, Inc., the publishers of the *Philadelphia Inquirer* and *King of Prussia Courier,* respectively, the newspaper reporters involved in the publications and the girl and her mother for defamation, invasion of privacy and intentional infliction of emotional distress. In addition, he sued Upper Merion Chief of Police Clement Reedel for defamation stemming from his confirmations to newspaper reporters that an assault complaint had been lodged with the Department against plaintiff and that a polygraph test of the teenager had been taken to confirm her account. He also sued Reedel and Upper Merion Police Lieutenant Robert Piermatteo for invasion of privacy in

connection with Reedel's above statements and for his and Piermatteo's disclosure of the alleged contents of his personnel file.

Additionally, he sued Reedel individually for intentional infliction of emotional distress and sought punitive damages against both Reedel and Piermatteo. Plaintiff claimed that all of the statements made by defendants were false and were made by the parties knowing them to be false.

Defendants filed an answer and new matter denying all material allegations of the complaint against them. They filed a motion for summary judgment on March 31, 1992, which was granted on April 1, 1993. Plaintiff thereafter perfected this appeal.

## DISCUSSION

Plaintiff argues that the court erred in granting defendants' motion for summary judgment. Summary judgment is appropriate only in those cases which are clear and free from doubt. *Dippold v. Amherst Insurance Co.*, 290 Pa. Super. 206, 434 A.2d 203 (1981). Since the moving party has the burden of proving that no genuine issues exist as to any material facts, this court must examine the record in the light most favorable to the non-moving party. *Id.* In so doing, we must accept as true all well-pleaded facts in plaintiff's pleadings and give him the benefit of all reasonable inferences to be drawn therefrom. *Brophy v. Philadelphia Newspapers Inc.*, 281 Pa. Super. 588, 422 A.2d 625 (1980). We are not limited to the pleadings in determining whether summary judgment was properly entered. We must also consider depositions, answers to interrogatories, admissions on file, and affidavits, if any, in our search for issues of material facts. Pa.R.C.P. 1035.

We initially address the assertion that we wrongfully dismissed the defamation claim against defendant Reedel. An action in defamation is based on a violation of the fundamental right of an individual to enjoy a reputation unimpaired by false and defamatory attacks. *Berg v. Consolidated Freightways, Inc.*, 280 Pa. Super. 495, 421 A.2d 831 (1980). In order to sustain such an action, the plaintiff has the burden of proving, after the issue is properly raised:

"(a)(1) The defamatory character of the communication.

"(2) Its publication by the defendant.

"(3) Its application to the plaintiff.

"(4) The understanding by the recipient of its defamatory meaning.

"(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

"(6) Special harm resulting to the plaintiff from its publication.

"(7) Abuse of a conditionally privileged occasion." 42 Pa.C.S. §8343(a).

The defendant can defend against a defamatory action by proving the truth of the defamatory communication, that the subject matter of the statement was of public concern, or that the occasion on which the statement was made or published was of a privileged character. 42 Pa.C.S. §8343(b). *Spain v. Vicente*, 315 Pa. Super. 135, 461 A.2d 833 (1983).

Plaintiff has failed to state a cause of action for defamation against defendant Reedel because the truth of the defamatory communications was adequately established. The only defamatory statements which Reedel purportedly made were his confirmations that the Upper Merion Police Department had received a complaint

from the alleged victim's mother and that a polygraph test was taken of the girl. Reedel produced documentation which substantiate the truth of these statements. (See exhibit B to defendant Reedel's brief in support of summary judgment.) Reedel filed a supplemental affidavit, in which he stated that a complaint was lodged by the alleged victim's mother to him and another officer regarding an alleged sexual assault on her daughter on November 17, 1979. In addition, Reedel stated that a polygraph test of the girl was administered on November 21, 1979, the results of which confirmed the truthfulness of her account. Thus, the undisputed evidence shows that Upper Merion Police did receive a complaint from Adams and a lie detector test was taken. Plaintiff's defamation claim must fail.

Plaintiff next alleges that the court erroneously dismissed his claim for invasion of privacy against Reedel and Piermatteo. He asserts that Reedel and Piermatteo invaded his privacy by disclosing the contents of plaintiff's personnel file including the existence of a polygraph or lie detector test and that the complaint resulted in an internal investigation. "Invasion of privacy is not one tort but rather a complex of four analytically distinct causes. These four causes are identified by the Restatement (Second) of Torts §§652B-E as: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing a person in false light." *Culver v. Port Allegany Reporter Argus,* 409 Pa. Super. 401, 404, 598 A.2d 54, 56 (1991).

Plaintiff's first privacy claim alleges publicity given to private life. Section 652D of the Restatement (Second) of Torts states:

"One who gives publicity to a matter concerning the private life of another is subject to liability to the

other for invasion of privacy, if the matter published is the kind that

"(a) would be highly offensive to a reasonable person and

"(b) is not of legitimate concern to the public."

"The elements of the tort are: (1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public." *Harris by Harris v. Easton Publishing Co.,* 335 Pa. Super. 141, 154, 483 A.2d 1377, 1384 (1984).

"The element of 'publicity' requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge ... The second element requires that the publicity involve a private fact. A private fact is one that has not already been made public ... The third element requires that a reasonable person of ordinary sensibilities would find such publicity highly offensive. In making this determination, the customs of the time and place, occupation of the plaintiff and habits of his neighbors and fellow citizens are material.... The act which constitutes the tortious invasion of privacy must be committed in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.... The final element exempts from liability those facts which are of legitimate concern to the public, such as official court records open to public inspection. ... This also applies to persons who, voluntarily or involuntarily, have become public figures, ... such as the life history of one accused of a sensational crime, ... and even to the members of that person's family." *Harris by Harris, supra* at 154-156, 483 A.2d 1377, 1384-1485. (citations omitted)

We do not believe that the third and fourth elements have been satisfied here. No genuine issues of material fact exist from the record in this case as to whether the publicity given to the contents of plaintiff's personnel file was highly offensive to a reasonable person or was of legitimate public concern. Police officers have no valid basis for believing that criminal conduct committed by them in their official capacity will not be publicized for all to read. Moreover, the existence of sexual assault charges against a candidate for the minor judiciary who, at the time of the alleged assault, was a police officer, is most definitely a subject of legitimate public concern.

"The right of privacy competes with the freedom of the press as well as the interest of the public in the free dissemination of news and information, and these permanent public interests must be considered when placing the necessary limitations upon the right of privacy." *Harris by Harris, supra* at 162, 483 A.2d at 1388 citing *Hull v. Curtis Publishing Company,* 182 Pa. Super. 86, 125 A.2d 644 (1956). An action based on such [a] right must not become a vehicle for establishment of a judicial censorship of the press." *Id.* On balancing these various interests, we find that defendants are entitled to judgment in their favor.

Plaintiff also claims that the invasion of privacy-false light tort applies to this case. Under section 652E of the Restatement (Second) of Torts, this tort is defined as follows:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

As stated by the en banc court in *Larsen v. Philadelphia Newspapers, Inc.,* 375 Pa. Super. 66, 81-82, 543 A.2d 1181, 1188 (1988), *allocatur denied,* 520 Pa. 597, 552 A.2d 251 (1988):

"As is so clearly stated in section 652E, a publication is actionable if it is not true, is highly offensive to a reasonable person and is publicized with knowledge or in reckless disregard of its falsity. See comments a, c & d. Further to constitute a tortious invasion of privacy an act must 'cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' "

Plaintiff has not established that he has been placed in a false light by defendants or that the statements would have been highly offensive to a reasonable person. As we stated above, misconduct complaints against police officers are of legitimate public interest, and the statements attributed to defendants in the articles were true. Furthermore, plaintiff's stature in the community as a public figure resulted in a relinquishment of insulation from scrutiny of his public affairs. *Neish v. Beaver Newspapers, Inc.,* 398 Pa. Super. 588, 581 A.2d 619 (1990), *allocatur denied,* 527 Pa. 648, 593 A.2d 421 (1991).

. This court rejects plaintiff's contention that defendants are liable for disclosing the information contained in his private personnel file. That the information confirmed to the newspapers was included in plaintiff's personnel file does not afford it the confidential status of a personnel

file under 43 P.S. §1321 et seq. Any records of an employee relating to the investigation of a possible criminal offense are exempted from the general rule of confidentiality accorded personnel files. See 43 P.S. §1321.

Plaintiff also argues that the lower court erred in dismissing his action for intentional infliction of emotional distress. We disagree. Although "the tort has not been adopted and made a part of the law of Pennsylvania," *Kelly v. Resource Housing of America,* 419 Pa. Super. 393, 399, 615 A.2d 423, 426 (1992), citing *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 197, 527 A.2d 988, 995 (1987), we need not address this issue since the record in this case does not support a cause of action for intentional infliction of emotional distress.

Recovery for intentional infliction of emotional distress will be allowed where there is conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." Restatement (Second) of Tort §46, comment (d) (1977); see *Banyas v. Lower Bucks Hospital,* 293 Pa. Super. 122, 437 A.2d 1236 (1981) (altering medical records to impute criminal acts); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979) (reckless diagnosis of fatal disease); *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970) (mishandling of corpse). As a matter of law, defendants' statements herein do not support a claim for either defamation or invasion of privacy against them and do not rise to the required level of atrocity. See *Gordon v. Lancaster Osteopathic Hospital,* 340 Pa. Super. 253, 489 A.2d 1364 (1985). Absent the requisite foundation of "outrageous conduct," plaintiff's claim for

intentional infliction of emotional distress was properly dismissed. On that basis, plaintiff's claim for punitive damages against defendants must also be dismissed. *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985).