In re Garth **LANSAW** and Deborah Lansaw, Debtor(s).

Garth Lansaw and Deborah Lansaw, Movant(s)

v.

Frank R. Zokaites, Respondent(s).

No. 06–23936 (JKF).

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 25, 2010.

---

Mark R. Lane, Dell, Moser, Lane & Loughney, Stanley A. Kirshenbaum, Pittsburgh, PA, for Debtors.

**MEMORANDUM OPINION[1]**

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court is "Frank R. Zokaites' Supplemental Motion for Summary Judg-

ment." Bankr.Doc. No. 203. For the reasons that follow, summary judgment will be denied.

*Background*

The issue arises because, in September 2005, Zokaites posted a 4 × 4 foot sign in the parking lot in front of the Lansaws' daycare center. The sign was allegedly visible to persons entering and exiting the daycare center, those entering and exiting other businesses in the same complex, and to individuals in motor vehicles traveling the two-lane road in front of the daycare center. Brief in Opposition to Supplemental Motion for Summary Judgment, Bankr. Doc. No. 204, Affidavit at 3, ¶ 8. *See also* Adv. Case No. 06–02645, Adv. Doc. No. 91, Memorandum Opinion at 3. The sign, in large letters, read "FOREVER YOUNG DAYCARE IS BEHIND ON THEIR RENT AND I AM EVICTING THEM. /s/ Frank Zokaites, LANDLORD." Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203; *Zokaites v. Lansaw,* Pa.C.P.Allegheny, Case No. GD–05–024702, Answer, New Matter and Counterclaim at Exhibit 1. The sign was posted for five days from September 5–9, 2005. Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203.

Prior to the posting of this sign, the Lansaws and Zokaites were involved in state court actions. The Lansaws commenced a declaratory judgment action against Zokaites in June 2005 (hereinafter, the "declaratory judgment action"). *Lansaw v. Zokaites,* Pa.C.P.Allegheny, Case No. GD–05–014674. This action was tried without a jury on May 8 and 9, 2006, and judgment was entered on May 10, 2006, in favor of Zokaites. The second action was

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

a confession of judgment action commenced by Zokaites against the Lansaws in July 2005 (hereinafter, the "confession of judgment action"). *Zokaites v. Lansaw,* Pa.C.P.Allegheny, Case No. GD–05–016487.

Subsequent to Zokaites' posting of the sign, the Lansaws posted two separate signs in response.[2] On September 22, 2005, Zokaites filed a third action, a complaint for injunctive relief and damages, asserting numerous claims arising from the posting of the signs by the Lansaws (hereinafter, the "complaint for injunctive relief"). *Zokaites v. Lansaw,* Pa.C.P.Allegheny, Case No. GD–05–024702, Complaint for Injunctive Relief and Damages. In response, the Lansaws filed an Answer, New Matter and Counterclaims. *Zokaites v. Lansaw,* Pa.C.P.Allegheny Case No. GD–05–024702, Answer, New Matter and Counterclaim. The counterclaims asserted several bases for damages, including a theory of false light/invasion of privacy.

The Lansaws filed a voluntary Chapter 13 bankruptcy petition on August 16, 2006. Bankr.Doc. No. 1. Zokaites filed a proof of claim in the amount of $189,399.09. Claim No. 13. The Lansaws filed an objection to Zokaites' claim. Bankr.Doc. No. 87. The objection included two counterclaims, the first of which requested sanctions for an alleged violation of the automatic stay and the second of which requested damages for alleged defamation, interference with contractual relations and false light/invasion of privacy.

In response, Zokaites filed an initial motion for summary judgment on April 30, 2009. Bankr.Doc. No. 182. In an Order dated June 19, 2009, this court granted Zokaites' motion with respect to the defamation and interference with contractual relations counts; the motion was denied with respect to the automatic stay and false light/invasion of privacy counts. Bankr.Doc. No. 201. The court ordered that further dispositive motions and briefs could be filed before July 20, 2009. Zokaites subsequently filed the Supplemental Motion for Summary Judgment that is at issue, again asking the court to grant summary judgment with respect to the false light/invasion of privacy claim. Bankr. Doc. No. 203. A hearing was held to consider this motion on September 1, 2009. Subsequent efforts to mediate the dispute were unsuccessful. The matter is ripe for disposition.

*Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a moving party is entitled to summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A motion for summary judgment can be defeated by the non-moving party if evidence is produced to create a genuine issue of material fact. *El v. SEPTA,* 479 F.3d 232, 238 (3d Cir. 2007) (citing *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993)). However, if the movant has satisfied its burden under Rule 56(c), the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). The non-mov-

---

**2.** The content of the two signs posted by the Lansaws is not at issue in the case at bench. We are considering only Zokaites' Supplemental Motion for Summary Judgment with respect to the Lansaws' false light/invasion of privacy counterclaim which involves the posting of a sign by Zokaites in early September 2005 and was filed in conjunction with the Lansaws' Objection to Claim of Frank R. Zokaites. Bankr.Doc. No. 87.

ing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). "Summary judgment may not be granted ... if there be an issue presented as to existence of any material fact; and all doubts as to existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment." *First Pennsylvania Banking & Trust Co. v. United States Life Ins. Co.*, 421 F.2d 959, 962 (3d Cir.1969) (citing *Sarnoff v. Ciaglia*, 165 F.2d 167, 168 (3d Cir.1947)).

■■■ In establishing a false light/invasion of privacy claim, Pennsylvania has adopted the definition of the tort as set out by the Restatement (Second) of Torts. *Vogel v. W.T. Grant Co.*, 458 Pa. 124, 327 A.2d 133, 135–36 (1974). *See also Larsen v. Philadelphia Newspapers*, 375 Pa.Super. 66, 543 A.2d 1181, 1188 (1988) (citations omitted) (explaining that the Superior Court has adopted the Restatement (Second) of Torts §§ 652B–E even though the "contours of this tort remain amorphous"). Specifically, § 652E of the Restatement provides:

> [o]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E. *See also Wecht v. PG Publishing Co.*, 725 A.2d 788, 790 (Pa.Super.1999). Thus, to succeed on a false light/invasion of privacy claim, the plaintiff must demonstrate that a "highly offensive false statement was publicized by [a defendant] with knowledge or in reckless disregard of the falsity." *Santillo v. Reedel*, 430 Pa.Super. 290, 634 A.2d 264, 266 (1993) (citing *Neish v. Beaver Newspapers, Inc.*, 398 Pa.Super. 588, 581 A.2d 619, 624 (1990), *alloc. denied*, 527 Pa. 648, 593 A.2d 421 (1991)). The court will address Zokaites' argument with respect to each element of a false light/invasion of privacy cause of action.

*Highly Offensive Nature and Falsity of Statement*

The Lansaws contend that the sign posted by Zokaites is "false in its overall impression and depiction of the legal dispute between Zokaites and the Lansaws because it did not ... attempt to set forth a description of the Lansaws' position in the litigation." Brief in Opposition to Supplemental Motion for Summary Judgment, Bankr.Doc. No. 204 at 5 (quoting *Zokaites v. Lansaw*, Pa.C.P.Allegheny Case No. GD–05–024702, Answer, New Matter and Counterclaim at 11, ¶ 54). Furthermore, the Lansaws allege that, at the time Zokaites posted the sign, he was aware of the sensitive nature of the sign's content with regard to the Lansaws' daycare business and was also aware that the Lansaws would not want that information to be made known to either the general public or their current clientele. *Id.* (quoting No. GD–05–024702, Answer, New Matter and Counterclaim at 11, ¶ 55). Finally, it is alleged that Zokaites intentionally invaded the Lansaws' privacy and maliciously portrayed them in a false light. *Id.* at 5–6. *See also* No. GD–05–024702, Answer, New Matter and Counterclaim at 11, ¶ 56.

Zokaites argues that the statements made on the posted sign could not be—and were not—offensive to the Lansaws as evidenced by the fact that the Lansaws ad-

mitted to speaking to their clients about the declaratory judgment action already commenced at the time the signs were posted. Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203. Zokaites contends that the posted sign merely reflects the same legal matter. *Id.* In a related argument, Zokaites also asserts that the Lansaws cannot prove the falsity of the statements, as the subject matter contained therein was already set forth in the litigation pending in state court between the parties. *Id.*

■■■ In considering whether publicity is highly offensive, one must ask whether "the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." Restatement (Second) of Torts, § 652E, cmt. c. The plaintiff must also prove that the defendant either had knowledge of the falsity of the statements or acted in reckless disregard of the falsity of the statements. Mere negligence is insufficient to support a claim for false light/invasion of privacy. *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 654 (Pa.Super.1999).

■■■ In applying the requirements of § 652E of the Restatement, the Pennsylvania Superior Court has held that "the element of falsity is met if the plaintiff alleges that the defendant knowingly or recklessly selectively printed or broadcast true statements or pictures in a manner which created a false impression." *Larsen*, 543 A.2d at 1189. *See also Santillo*, 634 A.2d at 267 (holding that a false light/invasion of privacy claim may succeed even where the statement publicized is true if the information, as a whole, tends to imply falsehood); *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 448 A.2d 6, 15 (1982) ("Literal accuracy of separate statements will not render a communication 'true' where . . . the implication of the communication as a whole was false"). To demonstrate that a communication implies falsehood a plaintiff "must show discriminate publication of true statements." *Santillo, supra*, at 267. In other words, the defendant "must have *created* a false impression by knowingly or recklessly publicizing selective pieces of true information." *Id.* The question becomes whether the statements were presented in a discrete manner which would allow the publication to be interpreted with inferences casting the plaintiff in a false light. *Id.* (citing *Dunlap, supra*, at 15). *See also Larsen, supra*, at 1189 ("[D]espite the accuracy of the facts disseminated, discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light entitles the grievant to recompense for the wrong committed").

It is undisputed that the Lansaws filed the declaratory judgment action against Zokaites in June 2005 and that Zokaites filed the confession of judgment action against the Lansaws in July 2005.[3] Both state court cases are matters of public record. The Lansaws have presented evidence indicating that all further actions related to their continued possession of the property had been stayed by a court order dated July 15, 2005.[4] Brief in Opposition

---

3. At the time the sign was posted by Zokaites in September 2005, a judgment had not been entered in either action.

4. We note that the court order is, in fact, dated July 15, 2005. The Allegheny County Court of Common Pleas docket indicates that the order was filed on September 2, 2005.

The Affidavit of Frank R. Zokaites states that the order is incorrectly dated and was instead entered by the state court on August 15, 2005. Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203, Affidavit of Frank R. Zokaites at ¶ 12. Regardless of which date is correct, the order was entered prior to the

to Supplemental Motion for Summary Judgment, Bankr.Doc. No. 204 at 6. In pertinent part, the order states:

> (7) All further proceedings respecting the Confessed Judgment entered herein are stayed and enjoined pending final disposition of the Petition and Rule to Show Cause, including any and all judicial or extrajudicial efforts by [Zokaites] respecting [the Lansaws'] continued possession and enjoyment of the Leased Premises, provided [the Lansaws] pay rent in the amount of $4,932.50 per month for the months of 8/05–10/05 to Frank Zokaites and $800.81 per month to Jeffrey T. Morris to be held in an interest bearing escrow pending the outcome of this proceeding and the proceeding at G.D. 05–14674 and for the months of November 2005 through October 2006 $5,132.50/mth to Frank Zokaites and the sum of $840.04/mth to Jeffrey T. Morris to be held in an interest bearing escrow pending the outcome of this proceeding and the proceeding at G.D. 05–14674.
>
> Within 7 days from the date of this order [the Lansaws] shall pay a lump sum of $14,797.50 to Frank Zokaites and a lump sum of $2,402.43 to Jeffrey T. Morris to be held in the interest bearing escrow.

*Zokaites v. Lansaw*, Pa.C.P.Allegheny, Case No. GD–05–16487, Order dated 7/15/05. *See* Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203, Exhibit E to Affidavit of Frank R. Zokaites. It is undisputed that Zokaites posted the sign on the Lansaws' property in September 2005 after the entry of the order recited above and before a final judgment or verdict was entered in either matter. Therefore, this court finds that a genuine issue of material fact exists as to the truth or falsity of the statements posted on the sign. Additionally, if it is ultimately determined that the statements are false or that they could be interpreted in such a manner as to imply falsehood, the court finds that a genuine issue of material fact also exists with respect to the issue of whether a reasonable person would find the statements and/or the implications of the statements to be highly offensive.

*Publication by Zokaites*

Zokaites argues that the Lansaws are precluded from demonstrating that a genuine issue of material fact exists with respect to this element of a false light/invasion of privacy claim because the sign was not posted on a public street, thus limiting the number of people who viewed the sign. Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203. Zokaites asserts that the requisite publicity was not given to the statements made in the sign, as the sign was posted in the parking lot of the Lansaws' business and only the Lansaws' clients had notice of the sign. *Id.*

The court finds that the Lansaws have presented sufficient evidence to create a genuine issue of material fact regarding whether the sign was publicized. In an affidavit attached to Lansaws' Brief in Opposition to Frank R. Zokaites' Supplemental Motion for Summary Judgment, Deborah Lansaw avers that she "personally observed approximately two hundred (200) individuals read the sign." Brief in Opposition to Supplemental Motion for Summary Judgment, Bankr.Doc. No. 204, Affidavit at 3, ¶ 11. Furthermore, Deborah Lansaw testified that she "personally talked to approximately one hundred twenty (120) individuals who read the sign" and Garth Lansaw testified that he "personally talked to approximately fifty (50) individuals who read the sign." *Id.*

posting of the sign by Zokaites on September 5–9, 2005.

at 3, ¶¶ 12–13. A genuine issue of material fact exists as to whether there was the requisite publicity required to support a false light/invasion of privacy action.

■ We also note that Zokaites contends that the Lansaws' false light/invasion of privacy claim should fail because the content of the sign merely reflects public facts. Zokaites cites *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 654 (Pa.Super.1999), for the proposition that a false light/invasion of privacy claim requires the publication of *private facts* not of legitimate concern to the public. *See also Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa.Super.1997) (citations omitted) ("The elements to be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public"). However, we do not find this to be a necessary element of a false light/invasion of privacy claim.

Comment a to § 652E of the Restatement (Second) of Torts explains that:

[t]he form of invasion of privacy covered by the rule stated in this Section does not depend upon making public any facts concerning the private life of the individual. On the contrary, it is essential to the rule stated in this Section that the matter published concerning the plaintiff is not true.[5] The rule stated here is, however, limited to the situation in which the plaintiff is given publicity.

Restatement (Second) of Torts, § 652E, cmt. a. While it is true that some courts have required a plaintiff to demonstrate that publicity was given to private facts in order to succeed on a theory of false light/invasion of privacy claim, all courts have not done so. *See, e.g., Wecht*, 725

A.2d at 790 ("One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false in light in which the other was placed would be highly offensive to a reasonable person and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed"). Furthermore, in *Larsen*, the Superior Court explained that:

[a] review of the writings and case on the subject at hand also gives credence to the tenet that recovery in tort for the disclosure of public, as well as private, facts, even though they may be true, is warranted to protect a claimant's right to be free from being placed in a false light and incurring the resultant mental suffering, shame or humiliation which may be caused by the discriminate publication of such facts.

543 A.2d at 1189 (citing *Prosser, Privacy*, 48 Cal.L.Rev. 383, 416 (1960); *Fogel v. Forbes*, 500 F.Supp. 1081, 1087 (E.D.Pa. 1980); *Hull v. Curtis Publ'g Co.*, 182 Pa.Super. 86, 125 A.2d 644, 646 (1956)).

In light of the language of § 652E of the Restatement, comment a to this section, and Pennsylvania case law such as *Wecht* and *Larsen*, we find that a false light/invasion of privacy claim is not dependent on whether the publicized facts concern the private life of the plaintiffs.

*Damages*

Finally, Zokaites asserts that the Lansaws' claim must fail because damages are merely speculative and not supported by factual affidavits or other evidence. In-

---

**5.** The court again notes that the element of falsity may be satisfied if the plaintiff can allege that "the defendant knowingly or recklessly selectively printed or broadcast true statements or pictures in a manner which created a false impression." *Larsen*, 543 A.2d at 1189.

stead, Zokaites contends that the Lansaws' "damage claim as stated in their affidavit merely sets forth the same conclusory statements made in their pleadings, which does not establish issues of material facts." [6] Supplemental Motion for Summary Judgment, Bankr.Doc. No. 203.

■ If successful in asserting a claim of false light/invasion of privacy, a plaintiff can recover damages for: "(a) the harm to his interest in privacy resulting from the invasion; (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and (c) special damage of which the invasion is a legal cause." Restatement (Second) of Torts § 652H; *Wecht*, 725 A.2d at 790.

■ Section 652H of the Restatement allows a plaintiff to recover damages reflecting the harm to his interest in privacy resulting from the invasion. Comment c to § 652H explains that:

[t]he proof of actual harm need not be of pecuniary loss and in the case of emotional distress may be simply the plaintiff's testimony. Whether in the absence of proof of actual harm an action might be maintained for nominal damages remains uncertain.

Restatement (Second) of Torts, § 652H, cmt. c. While the Restatement leaves open the possibility that nominal damages may

not be recoverable in a false light/invasion of privacy action if no actual harm is established, Pennsylvania case law has clarified the Commonwealth's position regarding the recovery of nominal damages. The Superior Court has held that the plaintiff in a false light/invasion of privacy action "need not suffer either pecuniary loss or physical harm as nominal damages can be awarded in that type of action." *Wecht*, *supra*, at 792 (citing *Aquino v. Bulletin Co.*, 190 Pa.Super. 528, 154 A.2d 422 (1959); *Harris v. Easton Publishing Co.*, 335 Pa.Super. 141, 483 A.2d 1377 (1984)).

■ With respect to mental distress as a basis for the recovery of damages under § 652H, Pennsylvania courts have held that such damages may be awarded if the plaintiff can demonstrate that the distress is of the nature usually resulting from the alleged invasion of privacy.[7] *Wecht*, *supra*, at 791.

■ In the case at bench, Zokaites argues that the Lansaws cannot prove emotional distress because they have not presented expert testimony to support this claim and discovery is closed. In *Wecht*, the Superior Court held that expert medical testimony is necessary to prove not only the emotional distress itself, but also to establish a causal relationship between the mental distress and the alleged invasion of privacy.[8] *Id.* The Lansaws do not

**6.** Zokaites also asserts that the Lansaws have added an additional claim for damages—specifically, a claim based on mental distress-and that this claim must fail because it was raised after the applicable statute of limitations period had expired. Under 42 Pa.C.S.A. § 5523, invasion of privacy actions must be commenced within one year. The court does not find merit in this argument. The Lansaws' claim asserts a new theory of damages and does not constitute a new and separate cause of action.

**7.** Comment b to § 652H of the Restatement (Second) of Torts states that "[t]he plaintiff

may also recover damages for emotional distress or personal humiliation that he proves to have been actually suffered by him, if it is of a kind that normally results from such an invasion and it is normal and reasonable in its extent. In this respect the action for invasion of privacy closely resembles that for defamation...." Restatement (Second) of Torts, § 652H, cmt. b.

**8.** This court notes that the District Court for the Eastern District of Pennsylvania has criticized and declined to follow the Pennsylvania Superior Court's opinion in *Wecht* that expert medical testimony is necessary to prove emo-

dispute that, to date, an expert report has not been obtained; however, they ask the court for time to retain an expert for trial. Discovery closed long ago and will not be reopened for the purpose of obtaining expert medical testimony. Thus, no expert will be permitted on this issue. However, the Lansaws may testify and produce lay witnesses.

We find that the Lansaws have established that there are material facts in dispute regarding the false light/invasion of privacy claim and the damages they allegedly suffered in the case at bench.

As such, Frank R. Zokaites' Supplemental Motion for Summary Judgment will be DENIED. An appropriate Order will be entered.

### ORDER

AND NOW, this *25th* day of *February*, 2010, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Frank R. Zokaites' Supplemental Motion for Summary Judgment is **DENIED.** A separate pretrial scheduling order will be issued.

---

tional distress damages. In *Fanelle v. LoJack Corp.*, 29 Media L. Rep. 1513, 2000 WL 1801270 (E.D.Pa.2000), the district court noted that:

> "[t]he Supreme Court of Pennsylvania has not held a plaintiff must produce expert medical testimony to recover damages for emotional and mental distress arising out of defamation and invasion of privacy claims. *Wecht* is not binding on this Court, and I do not find its reasoning to be persuasive. While a lay *witness* might not be able to compare a person's mental or emotional distress to that which 'normally results from' an invasion of privacy, I believe a reasonable *jury* could infer from lay testimony, without expert testimony, whether the emotional distress suffered by a person as a result of an invasion of privacy is

It is **FURTHER ORDERED** that counsel for Frank R. Zokaites shall immediately serve a copy of this Memorandum Opinion and Order on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

commensurate with the level of emotional distress one would normally expect to result from such conduct."

We are faced with the conflict that a federal district court has analyzed *Wecht* and found it unpersuasive, yet the highest state court in Pennsylvania to address the issue (i.e. the Pennsylvania Superior Court) has indicated that expert testimony is necessary. Although "[t]he opinions of intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise,'" *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir.2000) (quoting *West v. AT & T Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)), we need not decide the issue at this time.