# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 11, 2013 Session

## JENNIFER E. PATTERSON v. NATALIE D. GRANT-HERMS

**Appeal from the Circuit Court for Davidson County**
**No. 11C2977     Joseph P. Binkley, Jr., Judge**

---

**No. M2013-00287-COA-R3-CV - Filed October 8, 2013**

---

Operations agent employed by Southwest Airlines brought an action against a passenger for posting allegedly false and defamatory statements on Twitter and Facebook regarding actions taken by agent when passenger attempted to board a flight.  The trial court granted the passenger's motion for summary judgment, holding that the statements did not rise to the level of defamation, that the language could not be construed to hold the agent up to public ridicule, and that the language was not highly offensive to a reasonable person.  We affirm the grant of summary judgment on the defamation claim and reverse the grant of summary judgment on the claim for invasion of privacy; we remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined.  PATRICIA J. COTTRELL, P. J., M. S., concurring in part, dissenting in part.

Jennifer E. Patterson, Goodlettsville, Tennessee, Pro Se.

Lori J. Keene, Memphis, Tennessee; and Alan Sowell, Nashville, Tennessee, for the Appellee, Natalie D. Grant-Herms.

### OPINION

Jennifer Patterson, an operations agent employed by Southwest Airlines, filed this action against Natalie Grant-Herms, asserting causes of action for slander, defamation, libel, and false light invasion of privacy.  Ms. Patterson alleged that Ms. Grant-Herms made untrue statements and posted false and defamatory comments about her on Facebook and Twitter relative to a confrontation between the two when Ms. Grant-Herms and her three children attempted to board a plane in violation of Southwest Airlines policy.

In the complaint, Ms. Patterson alleged that Ms. Grant-Herms made the following statements:

a.  Defendant knowingly and intentionally, or in the alternative, with reckless disregard for the veracity of her statements, told the flight attendant on board that she was told by Ms. Patterson to "[g]et over it and stop flying Southwest." This statement was not true.

b.  Defendant knowingly and intentionally, or in the alternative, with reckless disregard for the veracity of her statements, shouted to those waiting to board the flight that Ms. Patterson, "won't let her daughter board the flight with [her]." This statement was not true.

c.  Defendant knowingly and intentionally, or in the alternative, with reckless disregard for the veracity of her statements, stated, "you are the only one who won't let us [cut in line]." This statement was not true. Defendant made other threatening comments towards the plaintiff at this time, threatening to contact her employer.

d.  After boarding the flight, Defendant knowingly and intentionally, or in the alternative, with reckless disregard for the veracity of her statements made several defamatory statements to the flight crew, including that Plaintiff told her to "stop flying Southwest," and "[g]et over it." These statements were not true.

She also alleged that Ms. Grant-Herms posted the following statements on Twitter, Facebook and southwest.com:

i.  "Gracie is 4. FOUR! she wanted her to board by herself or make us wait Till A34. Even though I was business select!"

ii.  "I fly @southwestair at least 75x/year. just had WORST experience. Me; A1, Sadie: A3 Gracie A34. Woman refused 2 let Gracie board w/ me."

iii.  Defendant tweeted: "Nashville. Gate A25. Flight to Denver. Her name is Jennifer. She said "get over it. Follow the rules. Or don't fly."

iv.  She has done this to me before. She has the WORST customer service. My daughter is FOUR.

v.  She re-tweeted: "that is ridiculous! [W]hat did she expect? Her walk on herself & find her seat like a grown adult?"

vi.  "If your [sic] sympathize with me, when you respond be sure & include @southwestair in tweet. They need to know this WRONG."

vii.  Sadie had MAJOR blowout. I think it's in response to our southwest air experience. She decided to leave them a gift on their plain. Teehee.

Asked me what they can do. I don't want free flight. Just apology from Jennifer. It's 4th time she's done it to me. Time will tell.

viii. Well, we've caused quite a stir, tweeps. @southwestair just called me. I appreciate their concern & prompt attention 2 the problem.

ix. I've got wifi on my flight. I'm impressed with how quickly @southwestair responded to my complaint. I'll keep u posted as to what they do.

After answering the complaint, Ms. Grant-Herms filed a motion to dismiss on the grounds that the statements she posted did not rise to the level of defamation or false light claims; the motion was denied. She subsequently filed a motion for summary judgment, supported by a statement of undisputed facts and Ms. Patterson's deposition; Ms. Patterson filed a responsive memorandum, relying on excerpts from her deposition as well as that of Ms. Grant-Herms. The court granted the motion, holding that the statements were not defamatory as a matter of law and that the language at issue "is not highly offensive to a reasonable person." Ms. Patterson appeals.

## I. STANDARD OF REVIEW

This appeal is from a grant of summary judgment, which is an appropriate vehicle for resolving a case where there is no genuine issue of material fact and a judgment may be rendered as a matter of law. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). In such proceedings, the moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. Pro. Rule 56.04; *see also* Tenn. Code Ann. § 20-16-101.[1]

---

[1] Tenn. Code Ann. § 20-16-101, enacted by 2011 Tenn. Pub. Acts. Ch. 498, became effective July 1, 2011 and applicable to cases filed on or after that date; that statute provides:

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

(1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

(2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

The preamble to Chapter 498 states that "the purpose of this legislation is to overrule the summary judgment

(continued...)

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Adver. & Publ. Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, we review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000). We consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and afford that party all reasonable inferences. *Draper*, 181 S.W.3d at 288; *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). "If there is a dispute as to any material fact or any doubt as to the conclusions to be drawn from that fact, the motion must be denied." *Byrd*, 847 S.W.2d at 211.

## II. DEFAMATION

In granting the motion for summary judgment, the court held that the statements were not defamatory:

> [T]he court finds as a matter of law the statements made by Defendant do not rise to the level of defamation pursuant to Tennessee law, and that the Court finds that the language cannot be reasonably construed to hold Plaintiff up to public hatred, contempt, or ridicule.

Ms. Patterson contends that the statements were "both undisputed and patently false," and "were an attempt by [Ms. Grant-Nelms] to paint [Ms. Patterson] as someone that would endanger the welfare of a four-year-old child."

---

[1](...continued)
standard for parties who do not bear the burden of proof at trial set forth in set forth in *Hannan v,. Alltel Publishing Co.* [270 S.W. 3d 1 (Tenn. 2008)], its progeny, and the cases relied on in *Hannan.*" Section 2 of Chapter 498 provides: "Except as set forth herein, Rule 56 of the Tennessee Rules of Civil Procedure remains unchanged." The statutory standard does not affect the analysis in this case.

As noted in *Secured Fin. Solutions, LLC v. Winer*:

> While the question of whether a statement was understood by the hearers in a defamatory sense is a fact question for the jury, "[t]he preliminary question of whether the statement is at all 'capable' of being understood in this defamatory sense is a question of law which should be determined by the court." *Shipley,* 1991 WL 77540, at *5 (citing *Stones River Motors, Inc. v. Mid-South Publ'g Co., Inc.,* 651 S.W.2d 713, 719 (Tenn. Ct. App.1983)). In making this determination, a court must consider whether "[t]he import of this language taken as a whole could reasonably be capable of a defamatory meaning." *Id.* The words must be given their natural and ordinary meaning "as would be reasonably understood by the people who hear them." *Id.* Statements alleged to be defamatory "should be judged within the context in which they are made" and "read as a person of ordinary intelligence would understand them in light of the surrounding circumstances." *Revis v. McClean,* 31 S.W.3d 250, 253 (Tenn.Ct.App.2000).

*Secured Fin. Solutions, LLC v. Winer*, No. M2009-00885-COA-R3-CV, 2010 WL 334644 at *3 (Tenn. Ct. App. Jan. 28, 2010). The court further explained that a statement is defamatory where "it tends so to harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *Id.* at *2 (citing *Biltcliffe v. Hailey's Harbor, Inc.,* No. M2003-02408-COA-R3-CV, 2005 WL 2860164, at * 4 (Tenn. Ct. App. Oct.27, 2005) (alteration in original) (quoting Restatement (Second) of Torts § 559 (1977)).

The function of the court in a defamation action is to determine "whether a communication is capable of bearing a particular meaning, and whether that meaning is defamatory." Restatement (Second) of Torts § 614 (1977). It is for the jury to determine "whether a communication, capable of a defamatory meaning, was so understood by its recipient." *Id.* Comment *d* to § 614 advises the court and jury, in performing their respective functions, to "take into account all the circumstances surrounding the communication of the matter complained of as defamatory. Thus the context of written or spoken words is an important factor in determining the meaning that they reasonably might convey to the person who heard or read them."

Considered in light of the entire circumstances, the statements attributed to Ms. Grant-Herms were expressions of her frustration and complaints that she was not able to board the flight in a manner she wanted (and which would have been be contrary to Southwest policy) and of the circumstances surrounding her efforts. While Ms. Grant-Herms chose not to include the entire circumstances in her communications and postings, particularly the fact that she did not have the appropriate passes to board the flight as she sought, the words

attributed to her could not reasonably be construed to portray Ms. Patterson as one who would endanger a 4-year old's welfare. Construing the words "in their 'plain and natural' import", *Stones River Motors, Inc.*, 651 S.W.2d at 719 (citing *Memphis Publishing Co. V. Nichols*, 569 S.W.2d 412 at 419, ftn. 7 (Tenn. 1978), the trial court properly determined as a matter of law that Ms. Grant-Herms' statements did not rise to the level to constitute actionable defamation.

III.  FALSE LIGHT INVASION OF PRIVACY

The court also granted summary judgment to Ms. Grant-Herm on Ms. Patterson's claim of false light invasion of privacy, holding that the language "was not highly offensive to a reasonable person."  The court did not explain the basis of this holding.

In *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001), the Tennessee Supreme Court recognized the tort of false light invasion of privacy as set forth in the Restatement of Torts:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977).[2]  As noted in *West v. Media Gen. Convergence, Inc.*, the interest to be protected in a false light claim is "the subjective one of

---

[2]  Comment *b* to § 652E notes:

The interest protected by this Section is the interest of the individual in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as [s]he is. . . .

It is not, however, necessary to the action for invasion of privacy that the plaintiff be defamed. It is enough that [s]he is given unreasonable and highly objectionable publicity that attributes to [her] characteristics, conduct or beliefs that are false, and so is placed before the public in a false position. When this is the case and the matter attributed to the plaintiff is not defamatory, the rule here stated affords a different remedy, not available in an action for defamation.

injury to [the] inner person." 53 S.W.3d at 645-646 (quoting *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70, 83 (1984)). For the reasons set forth below, we have determined that the court erred in granting summary judgment on this claim.

In her brief on appeal, Ms. Grant-Herms argues that the words are not offensive because "[t]he appellant works for an airline. As this court is surely aware, airlines are notorious for bad customer service. The statements that were made by the appellee in this case are not only not highly offensive, they are sentiments that have likely been uttered by airline passengers for decades." This argument, however, does not address the threshold question of whether the statements themselves put Ms. Patterson in a false light; that is, was there such a "major misrepresentation of [her] activities that serious offense may reasonably be expected to be taken." Restatement (Second) of Torts § 652E, comment *c*.[3]

In *Eisenstein v. WTVF-TV, News Channel 5*, *LLC*, this court considered the differences and similarities between a defamation claim and one based on false light invasion of privacy claim; we noted with respect to the false light claim:

> [t]he angle from which the facts are presented, or the omission of certain material facts, results in placing the plaintiff in a false light. " 'Literal accuracy of separate statements will not render a communication "true" where the implication of the communication as a whole was false.' ... The question is whether [the defendant] made 'discrete presentations of information in a fashion which rendered the publication *susceptible to inferences* casting [the plaintiff] in a false light.' " *Santillo v. Reedel,* 430 Pa.Super. 290, 634 A.2d 264, 267 (1993)(citing  *318 *Larsen v. Philadelphia Newspapers, Inc.,* 375 Pa. Super. 66, 543 A.2d 1181 (1988) (emphasis added)).

---

[3] With specific reference to the "highly offensive to a reasonable person" language, comment *c* to § 652E states in pertinent part:

The rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity. . . . It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

Thus, the falsehood involved in a false light action "may consist in dissemination of matters which, while technically true, give an objectionably false impression where the communicator fails to modify the basic statement with amplifying facts which modify the statement to create a less objectionable impression corresponding to full reality." Russell G. Donaldson, Annotation, *False Light Invasion of Privacy—Cognizability and Elements,* 57 A.L.R.4th 22, § 13 (Cum.Supp.2012).

*Eisenstein v. WTVF-TV, News Channel 5 Network, LLC*, 389 S.W.3d 313, 317-18 (Tenn. Ct. App. 2012), appeal denied (Dec. 11, 2012) (citing *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 645, n. 5)).

The materials filed by Ms. Grant-Herms did not specifically address the elements of the false light invasion of privacy claim. To the extent she relied upon the words themselves to negate the "highly offensive to a reasonable person element" of the claim, construing the words in a light most favorable to Ms. Patterson and affording her all reasonable inferences, we believe that a reasonable person could find, under the entire circumstances of the incident, that Ms. Grant-Herms' posting of selective facts placed Ms. Patterson in a false light by implying that Ms. Patterson was rude and a bad service agent, one who was more concerned with adherence to the airline rules and procedures than the welfare of the child, and that these implications caused injury to her.[4] Considering the record, Ms. Grant-Herms has not shown she is entitled to summary judgment on the false light invasion of privacy claim.

## III. CONCLUSION

For the foregoing reasons we affirm the grant of summary judgment to Ms. Grant-Herms on the defamation claim, reverse the grant of summary judgment on the false light invasion of privacy claim, and remand the case for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

---

[4] In opposing the motion for summary judgment, Ms. Patterson relied on portions of the depositions of both parties to give a more complete context to Ms. Grant-Herms' posted statements.